# EXHIBIT 4

Affidavit of
Leonard A. Sclafani, Esquire

# AAMC UNIFORM CLINICAL TRAINING AFFILIATION AGREEMENT

# VISITING STUDENT IMPLEMENTATION LETTER

The purpose of this letter is to provide a record of the clinical training affiliation agreement between <u>American University of Antigua College of Medicine, c/o Manipal Education Americas, LLC</u> (the "SCHOOL") and <u>Grand Strand Regional Medical Center</u> the ("HOST AGENCY") with respect to a clinical training experience for the SCHOOL'S students and the agreement of the parties to abide by all terms and conditions of the AAMC Uniform Clinical Training Affiliation Agreement (dated June 4, 2015) which is hereby incorporated by reference, without modification or exception except as specified below.

Modifications or Exceptions (if none, please indicate by writing "none"):

1. Section A5 under **Responsibilities of the SCHOOL** (Page 2 of 9) removed and replaced as follows:

   SCHOOL will require all participating students to have completed an appropriate criminal background check, and to have documented appropriate immunizations on file with SCHOOL. SCHOOL shall notify the student of Host Agency's requirement for evidence of successful criminal background check results, health and immunization records, and proof of negative drug test results prior to the first day of their learning experience. SCHOOL will also inform students that they may be required to undergo a drug test or other similar screening tests pursuant to the Host Agency's policies and practices, and that the cost of any such test will be paid by the student. All students shall pass a medical examination acceptable to Host Agency prior to their participation in the learning experience at Host Agency at least once a year or as otherwise required by applicable laws. SCHOOL and/or the student shall be responsible for arranging for the student's medical care and/or treatment, if necessary, including transportation in case of illness or injury while participating in the learning experience at Host Agency. In no event shall Host Agency be financially or otherwise responsible for said medical care and treatment. Students will present the following health records on the first day of their educational experience at Host Agency. Students will not be allowed to commence experiences until all records are provided:

   (i) Tuberculin skin test within the past 12 months or documentation as a previous positive reactor; and

   (ii) Proof of Rubella and Rubeola immunity by positive antibody titers or 2 doses of MMR; and

   (iii) Varicella immunity, by positive history of chickenpox or proof of Varicella immunization; and

   (iv) Proof of Hepatitis B immunization or declination of vaccine, if patient contact is anticipated.

   (v) Proof of Influenza vaccination during the Flu season, October 1 to March 31, (or dates defined by CDC), or a signed Declination Form.

   (vi) Evidence of a Negative drug screen.

   The background check for students shall include, at a minimum, the following:

   (i) Social Security Number Verification;

   (ii) Criminal Search (7 years or up to 5 criminal searches);

    (iii)    Violent Sexual Offender and Predator Registry Search;

    (iv)    HHS/OIG List of Excluded Individuals/Entities;

    (v)    GSA List of Parties Excluded from Federal Programs;

    (vi)    U.S. Treasury, Office of Foreign Assets Control (OFAC), List of Specially Designated Nationals (SDN); and

    (vii)    Applicable State Exclusion List, if available.

2. SCHOOL will and will require that each student keeps strictly confidential and holds in trust all non-public information of Host Agency, including all patient information, and refrains from disclosing such confidential information to any third party without the express prior written consent of Host Agency, provided that the minimum necessary confidential information may be disclosed pursuant to valid legal process or as required by law or court order after Hospital is permitted an opportunity to minimize the potential harmful effects of such disclosure. SCHOOL shall not disclose the terms of this Agreement to any person who is not a party to this Agreement or a student, except as required by law or as authorized by Host Agency. These confidentiality requirements survive the termination or expiration of the Agreement.

3. Only those students who apply for and are accepted to a rotation at Host Agency through ClinicianNexus or a similar program in use by Host Agency will be permitted to rotate to Host Agency pursuant to this agreement.

4. SCHOOL will require each student to complete and submit the Confidentiality and Security Agreement attached hereto as **Exhibit B**, before the student is permitted to participate in the Program onsite at Hospital.

5. SCHOOL shall require each Student to sign a Statement of Responsibility, in the form attached hereto as **Exhibit C**.

6. School shall advise Student to provide evidence to the Host Agency of any required criminal background checks and drug test issued by PreCheck, and that the cost of any such test will be paid by the student. Host Agency shall provide instructions to School for student to access PreCheck and appropriately forward test results to Host Agency prior to any rotation at Host Agency.

7. Section O, Entire Agreement, add to the end of the Section:

    This Agreement supersedes all prior agreements between the parties related to the subject matter hereof.

| | |
|---|---|
| Student Name: | Emily L. Maggioncalda |
| Clinical Training Experience: | various specialties |
| Dates of Training Experience: | ~~March 2020 – July 2020~~  July 2020 - October 2020 |

19 Feb 2020

[Signatures on Following Page]

This IMPLEMENTATION LETTER is effective when signed by all parties. The individuals executing this IMPLEMENTATION LETTER are authorized to sign on behalf of their institutions and certify that their institutions have accepted the terms of the Uniform Clinical Training Agreement and further agree to comply with its terms except as noted above.

**SCHOOL:** American University of Antigua College of Medicine

**Signature:** _[signature]_ Date: 13 Feb 2020
Vice President for Administration & Community Affairs

**Address:** University Park
Jabberwock Beach Road
P.O. Box W1451
Coolidge, Antigua

**HOST AGENCY:** Grand Strand Regional Medical Center

**Signature:** _[signature]_ Date: 2/13/20

**By:** ~~Scott Duncan, MD, MPH, MBA~~ Victor E. Collier MD, FACP,

**Title:** DIO

**Rotation Address:** Grand Strand Regional Medical Center

809 82ND PARKWAY

MYRTLE BEACH, SC 29572

## EXHIBIT B

### Workforce Member Confidentiality and Security Agreement

I understand that the HCA affiliated entity(ies) (the "Company") for which I am a Workforce Member (my "Engagement") manages health information and has legal and ethical responsibilities to safeguard the privacy of its patients and their personal and health information ("Patient Information"). "Workforce Member" means employees, employed Licensed Independent Practitioners (LIPs) (e.g., employed/managed physicians), employed Advanced Practice Professionals (APPs), residents/fellows, students (e.g., nursing, medical, and interns), faculty/instructors, contractors (e.g., HealthTrust Workforce Solutions (HWS), travelers, network/per diem staff, or dependent healthcare professionals and/or contracted through another temporary staffing agency), and volunteers.

Additionally, the Company must protect its interest in, and the confidentiality of, any information it maintains or has access to, including, but not limited to, financial information, marketing information, Human Resource Information, (as defined below), payroll, business plans, projections, sales figures, pricing information, budgets, credit card or other financial account numbers, customer and supplier identities and characteristics, sponsored research, processes, schematics, formulas, trade secrets, innovations, discoveries, data, dictionaries, models, organizational structure and operations information, strategies, forecasts, analyses, credentialing information, Social Security numbers, passwords, PINs, and encryption keys (collectively, with patients' information, "Confidential Information"). The Company must also protect Company Property (such as inventions, software, trade secrets, and Developments (as defined below)).

During the course of my Engagement with the Company, I understand that I may access, use, or create Confidential Information. I agree that I will access and use Confidential Information only when it is necessary to perform my job-related duties and in accordance with the Company's policies and procedures, including, without limitation, its Privacy and Security Policies (available at http://hcahealthcare.com/ethics-compliance/ and the Information Protection Page of the Company's intranet). I further acknowledge that I must comply with such policies, procedures, and this Confidentiality and Security Agreement (the "Agreement") at all times as a condition of my Engagement and in order to obtain authorization for access to Confidential Information and/or Company systems. I acknowledge that the Company is relying on such compliance and the representations, terms and conditions stated herein.

### *General*

1. I will act in the best interest of the Company and, to the extent subject to it, in accordance with its Code of Conduct at all times during my Engagement with the Company.
2. I have no expectation of privacy when using Company systems and/or devices. The Company may log, access, review, and otherwise utilize information stored on or passing through its systems, devices and network, including email.
3. Any violation of this Agreement may result in the loss of my access to Confidential Information and/or Company systems, or other disciplinary and/or legal action, including, without limitation, suspension, loss of privileges, and/or termination of my Engagement with the Company, at Company's sole discretion in accordance with its policies.

### *Patient Information*

4. I will access and use Patient Information only for patients whose information I need to perform my assigned job duties in accordance with the HIPAA Privacy and Security Rules (45 CFR Parts 160—164), applicable state and international laws (e.g., the European Union General Data Protection

Regulation), and applicable Company policies and procedures, including, without limitation, its Privacy and Security Policies (available at http://hcahealthcare.com/ethics-compliance/ and the Information Protection Page of the Company's intranet).
5. I will only access, request and disclose the minimum amount of Patient Information needed to carry out my assigned job duties or as needed for treatment purposes.
6. By accessing or attempting to access Patient Information, I represent to the Company at the time of access that I have the requisite job-related need to know and to access the Patient Information.

## Protecting Confidential Information

7. I acknowledge that the Company is the exclusive owner of all right, title and interest in and to Confidential Information, including any derivatives thereof.
8. I will not publish, disclose or discuss any Confidential Information (a) with others, including coworkers, peers, friends or family, who do not have a need to know it, or (b) by using communication methods I am not specifically authorized to use, including personal email, Internet sites, Internet blogs or social media sites.
9. I will not take any form of media or documentation containing Confidential Information from Company premises unless specifically authorized to do so as part of my job and in accordance with Company policies.
10. I will not transmit Confidential Information outside the Company network unless I am specifically authorized to do so as part of my job responsibilities. If I am authorized to transmit Confidential Information outside of the Company, I will ensure that the information is encrypted according to Company Information Security Standards and ensure that I have complied with the External Data Release policy and other applicable Company privacy policies.
11. I will not retain Confidential Information longer than required by the Company's Record Retention policy.
12. I will only reuse or destroy media in accordance with the Company's Information Security Standards.
13. I acknowledge that in the course of performing my job responsibilities I may have access to human resource information which may include compensation, age, sex, race, religion, national origin, disability status, medical information, criminal history, personal identification numbers, addresses, telephone numbers, financial and education information (collectively, "Human Resource Information"). I understand that I am allowed to discuss any Human Resource Information about myself and other employees if they self-disclose their information. I can also discuss Human Resource Information that does not relate to my individual employment or my job responsibilities and that is not in violation of any other provision in this Agreement.

## Using Mobile Devices, Portable Devices and Removable Media

14. I will not copy, transfer, photograph, or store Confidential Information on any mobile devices, portable devices or removable media, such as laptops, smart phones, tablets, CDs, thumb drives, external hard drives, unless specifically required and authorized to do so as part of my Engagement with the Company.
15. I understand that any mobile device (smart phone, tablet, or similar device) that synchronizes Company data (*e.g.*, Company email) may contain Confidential Information and as a result, must be protected as required by Company Information Security Standards.

## Doing My Part – Personal Security

16. I will only access or use systems or devices I am authorized to access, and will not demonstrate the operation or function of systems or devices to unauthorized individuals.
17. I will not attempt to bypass Company security controls.
18. I understand that I will be assigned a unique identifier (*i.e.*, 3-4 User ID) to track my access and use of Company systems and that the identifier is associated with my personal data provided as part of the initial and/or periodic credentialing and/or employment verification.

19. In connection with my Engagement, I will never:
    a. disclose or share user credentials (e.g., password, SecurID card, Tap n Go badge, etc.), PINs, access codes, badges, or door lock codes;
    b. use another individual's, or allow another individual to use my, user credentials (e.g., 3-4 User ID and password, SecurID card, Tap n Go badge, etc.) to access or use a Company computer system or device;
    c. allow a non-authorized individual to access a secured area (e.g., hold the door open, share badge or door lock codes, and/or prop the door open);
    d. use tools or techniques to break, circumvent or exploit security measures;
    e. connect unauthorized systems or devices to the Company network; or
    f. use software that has not been licensed and approved by the Company.
20. I will practice good workstation security measures such as locking up media when not in use, using screen savers with passwords, positioning screens away from public view, and physically securing workstations while traveling and working remotely.
21. I will immediately notify my manager, Facility Information Security Official (FISO), Director of Information Security Assurance (DISA), Facility Privacy Official (FPO), Ethics and Compliance Officer (ECO), or Facility or Corporate Client Support Services (CSS) help desk or if involving the United Kingdom, the Data Protection Officer (DPO), Information Governance Manager, Caldicott Guardian, Heads of Governance (HoG), Division Chief Information Security Officer (CISO) if:
    a. my user credentials have been seen, disclosed, lost, stolen, or otherwise compromised;
    b. I suspect media with Confidential Information has been lost or stolen;
    c. I suspect a virus or malware infection on any system;
    d. I become aware of any activity that violates this Agreement or any Company privacy or security policies; or
    e. I become aware of any other incident that could possibly have any adverse impact on Confidential Information or Company systems.

## Upon Separation

22. I agree that my obligations under this Agreement will continue after termination or expiration of my access to Company systems and Company Information.
23. At the end of my Engagement with the Company for any reason, I will immediately:
    a. securely return to the Company any Confidential Information, Company related documents or records, and Company owned media (e.g., smart phones, tablets, CDs, thumb drives, external hard drives, etc.). I will not keep any copies of Confidential Information in any format, including electronic; and
    b. un-enroll any non-Company owned devices from the Company Enterprise Mobility Management System, if applicable.

## Except to the Extent Otherwise Agreed in a Separate Agreement, the Following Statements Apply to All Workforce Members

24. I shall promptly disclose to the Company all Company Property that I develop during my Engagement. "Company Property" means any subject matter (including inventions, improvements, designs, original works of authorship, formulas, processes, compositions of matter, software, databases, confidential information and trade secrets), whether belonging to the Company or others, that, directly or indirectly: (i) I author, make, conceive, first reduce to practice, or otherwise create or develop, whether alone or with others using any Company equipment, supplies, facilities, or Confidential Information, or (ii) otherwise arises from work performed by me for the Company, its employees, or agents, (each of the foregoing, a "Development").
25. As between me and the Company, all Company Property is the property of the Company or its designee, and all copyrightable Developments that I create within the scope of my employment are "works made for hire."
26. I agree to assign, and do hereby irrevocably assign, to the Company or its designee all of my right, title, and interest in and to any and all Developments, together with all intellectual property and other

proprietary rights therein or arising therefrom, including any registrations or applications to register such rights and the right to sue for past, present, or future infringements or misappropriations thereof.

27. During and after my Engagement, I agree to execute any document and perform any act to effectuate, perfect, enforce, and defend the Company's rights in any Development. I hereby appoint the Company and its authorized agent(s) as my attorney in fact to execute such documents in my name for these purposes, which power of attorney shall be coupled with an interest and shall be irrevocable, if I fail to execute any such document within five (5) business days.

28. If there is a conflict between a term in Sections 24 through 28 and a term separately agreed to in writing with the Company, the term set forth in the separate agreement will control.

By signing this document, I acknowledge that I have read and understand this Agreement, and I agree to be bound by and comply with all the representations, terms and conditions stated herein.

| Signature | Date |
|---|---|
| Printed Name | 3/4 ID |

## EXHIBIT C

## STATEMENT OF RESPONSIBILITY

For and in consideration of the benefit provided the undersigned in the form of experience in a clinical setting at  Grand Strand Regional Medical Center  ("Hospital"), the undersigned and his/her heirs, successors and/or assigns do hereby covenant and agree to assume all risks and be solely responsible for any injury or loss sustained by the undersigned while participating in the learning experience operated by:  American University of Antigua College of Medicine, c/o Manipal Education Americas, LLC ("School") at Hospital unless such injury or loss arises solely out of Hospital's gross negligence or willful misconduct.

_____          _____
Signature of Student/Print Name                              Date