IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Emily Doe | ) | Civil Action No.: 4:20-cv-04445-SAL |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | **RESPONSE TO MOTION TO DISMISS** |
| | ) | **AND** |
| American University of Antigua Inc., | ) | **MOTION TO PERMIT DISCOVERY ON** |
| | ) | **PERSONAL JURISDICTION** |
| Defendant | ) | |
| | ) | |

Plaintiff, Emily Doe ("Emily"), submits the following in response to the Defendant American University of Antigua Inc.'s ("AUA") Motion to Dismiss (ECF No. 15) based upon a claim of insufficient contacts with South Carolina to permit the court to exercise personal jurisdiction over it. For the reasons set forth hereinbelow, Plaintiff respectfully urges that Defendant's motion be denied.

In the alternative, Emily petitions this Court for permission to engage in limited discovery for purposes of determining facts relevant to the assertion by Defendant that it lacks sufficient minimum contacts with South Carolina to subject it to personal jurisdiction in this Court. In that event, Emily seeks an extension of time to respond to the Motion to Dismiss until satisfactory discovery responses and materials have been received to provide additional clarity on this jurisdictional issue that warrants further investigation based on the information already available and referenced below.

**LEGAL STANDARD**

Emily recognizes that the burden is on her to establish a sufficient factual record for the district court to determine the jurisdictional issue. *Combs v. Bakker*, 886 F.2d 673 (4th Cir.1989). The court may consider all the pleadings, "affidavits and other supporting documents… in the light

most favorable to the plaintiff, drawing all inferences and resolving all factual disputes in [her] favor" and "assuming [plaintiff's] credibility." *Masselli & Lane P.C. v. Miller & Schuh P.A.,* 215 F.3d 1320 (4th Cir.2000). The District Court may consider whether subject jurisdiction exists over Defendant AUA under either a "specific" or "general" basis, such that any allowed discovery on this issue would necessarily relate to a broad range of topics. *ESAB Grp. Inc. v. Centribut, LLC*, 34 F.Supp.2d 323, 328 (D.S.C. 1999).

"South Carolina's long-arm statute extends to the constitutional limits that the due process clause imposes… As a result, the state-law analysis collapses into the constitutional analysis." *Young v. F.D.I.C.*, 103 F.3d 1180 (4th Cir.1997). *See also Hidria USA Inc. v. Delo*, 415 S.C. 533, 783 S.E.2d 839 (Ct.App. 2016).

## KNOWN SOUTH CAROLINA CONNECTIONS[1]

In support of its "insufficient contacts" position, Defendant AUA has filed an affidavit dated February 18, 2021 from Leonard A. Sclafani. (ECF 15-2). In the first paragraph, it states:

> I am an attorney… employed as the Senior Vice President and General Counsel of Manipal Education Americas LLC… In that position I provide legal services to American University of Antigua ("AUA") pursuant to a contract between Manipal and AUA. In my position as counsel to AUU, I have personal knowledge…

> (*Id*. at ¶ 1).

As such, the only evidence submitted by Defendant which denies sufficient South Carolina contacts comes not from an employee of AUA. Instead, from an employee of another company who acts as legal counsel for AUA. The inferences to be considered in Plaintiff's favor include the unreliability of such a biased affidavit.

---

[1] The information set forth herein, other than the information supplied by Emily, is available from public documents and Defendant AUA's website pages.

<u>Contractual Connections to South Carolina</u>

Even so, Defendant's agent Sclafani acknowledges that Defendant AUA entered into a "Uniform Clinical Training Affiliation Agreement" with Grand Strand Medical Center (location: Myrtle Beach, SC) for purposes of providing clinical training rotations for students from AUA and even attached a copy of the Agreement to his affidavit. (ECF 15-6). The document is signed in February 2020, for a period covering "July 2020-October 2020."[2] *Id.* Notwithstanding, he states in the same affidavit "none of the teaching hospitals with which AUA has contractual affiliations for the purpose of providing clerkship training for AUA's students is located in South Carolina." *Id.* ¶ 10.

While the terminology of AUA's contract with Grand Strand Medical Center (location: Myrtle Beach, South Carolina) may not provide for "clerkship training," it <u>is</u> a contract through which AUA provides medical education for students as recently as October 2020 (with potential renewal since). Emily's transcript from Defendant AUA reflects her earning credit for two electives (anesthesiology and internal medicine) at Grand Strand Medical Center from August 3, 2020 through September 25, 2020.[3] **Exhibit A**.

Additionally, a Voorhees College (location: Denmark, South Carolina) press release from October 22, 2020 announced that AUA had signed a "memorandum of understanding" with Voorhees College to partner "to provide an opportunity to enter and diversity the physician workforce." **Exhibit B**. Defendant AUA verifies this on its website, where AUA currently lists Voorhees College among its "partnership" university and colleges. *See*

---

[2] This includes the time period during which some of Defendant AUA's conduct occurred, about which Emily complains in this action.

[3] Discovery will be required to determine if other current or past students from Defendant AUA received any of their AUA medical education in South Carolina. As set forth infra, Defendant AUA has placed more than twenty of its graduates in residencies at hospitals in South Carolina during the past ten years.

https://www.auamed.org/why-aua/university-partnerships/.  The website indicates that graduates "from participating universities… may be eligible for a Preferred Partner Grant in addition to any scholarships they may be eligible to receive…" *Id.*  Clearly this existing "partnership" with a South Carolina located college exists to funnel graduates of Vorhees to medical school at Defendant AUA through an apparent ongoing relationship and program that includes potential financial benefits.

<u>Senior Administration Connections to South Carolina</u>

Robert Mallin, who identifies himself publicly and professionally as the "University Provost American University of Antigua," and who is in fact the current Provost for AUA, maintains a residence in South Carolina and is currently licensed to practice medicine in South Carolina.  **Exhibit C**.  Dr. Mallin became licensed as a physician in South Carolina in 1996. **Exhibit D**.  Dr. Mallin also identifies himself as having been the Associate Chair for Education at the Medical University of South Carolina from July 2012 to January 2014, and states he joined Defendant AUA as Executive Dean.[4]  **Exhibit C**.  Public records indicate that he purchased a single-family residence home located in the Isle of Palms, SC in 2006, which was later sold, while the same year (2006) he purchased a condominium in Mount Pleasant, SC that he still apparently still owns.  *See* Charleston County R.O.D., Book 373, Page 847; Book 57, Page 866; and Book 571, page 035).

Another dean at Defendant AUA, Kimberly Mallin, is identified by AUA's website as Associate Dean of Wellness and Inclusion.  **Exhibit F**.  She became licensed to practice medicine

---

[4] Discovery will reveal the details, but there is an inference he was solicited from his position as Associate Chair for Education at the Medical University of South Carolina to Defendant AUA.  Property ownership records for his condominium in South Carolina reflect Mallin's current claim of a homestead exemption at that location. **Exhibit E**.

in South Carolina in 2000, and that SC license remains current.  **Exhibit G**.  She also has an address

in New York state, but not the same address as Robert Mallin.  *Id.*  It is a reasonable inference that

one, or both, Mallins working in senior administrative positions for Defendant AUA may perform

their duties from within the state of South Carolina on a frequent basis.

<u>Student and Graduate Connections to South Carolina</u>

Emily currently resides in South Carolina and was so domiciled four years ago when she

applied for admission to AUA.  **Exhibit H**.  Emily did clinical rotations for her AUA degree at

Grand Strand Medical Center in Myrtle Beach in 2020[5].  Two of her classmates are also residents

of South Carolina.  *Id.*  A current resident at Grand Strand Medical Center is a graduate of AUA,

and online information from Defendant AUA shows that it has placed 22 of its graduates for

residencies in South Carolina during the past decade.  **Exhibit H**.

N. A., who is believed to be a current resident at Grand Strand Medical Center, is licensed

to practice medicine in South Carolina and lists her address in South Carolina.  **Exhibit I**.   Public

records list her as a 2020 graduate of Defendant AUA.  *Id.*  Similarly, M.K., whose South Carolina

license information shows him to be a resident at Grand Strand Medical Center, is a 2019 graduate

of Defendant AUA.  **Exhibit J**.

Online information for the College of Medicine at University of South Carolina shows a

current fellow who is a graduate of Defendant AUA with the initials K.J.  **Exhibit K**.

Current online information for the AUA Alumni Directory (accessible at

www.auaalumn.org) shows a graduate of Defendant AUA, whose initials are B.V., who was

referred for employment by the AUA Alumni Referral Program and is currently employed as

---

[5]  Discovery will be necessary to determine if other past or current AUA students did rotations in South Carolina.

Founding Associate Program Director Interim Medical Director of Tidelands Medical University of South Carolina (MUSC) Family Medicine Residency Program in Murrells Inlet, South Carolina. Her online information also identifies her as an Assistant Professor of Family Medicine and an Attending Physician at MUSC in Charleston, South Carolina.  B.V. currently holds South Carolina License No. 35633, who received her temporary license to practice in South Carolina in 2013 and has been continuously licensed since that time. **Exhibit L**.

Twenty-two graduates of AUA have been placed for residency in South Carolina over the past decade, as detailed on AUA's alumni page.  The AUA Alumni Residency Placement website and AUA website[6] lists residency placements for AUA graduates as follows:

a.  2020 – two AUA graduates placed for residency in South Carolina, one at Grand Strand Medical Center and one at Prisma Health, University of South Carolina School of Medicine in Greenville.

b.  2019 – two AUA graduates placed for residency in South Carolina, one at Grand Strand Regional Medical Center and one at Prisma Health-Midlands/University of South Carolina School of Medicine in Columbia.

c.  2017 – three AUA graduates placed for residency in South Carolina, two at Grand Strand Medical Center and one at Tidelands Health, which has locations in Murrells Inlet and Georgetown, South Carolina.

d.  2016 – one AUA graduate placed for residency in South Carolina at Grand Strand Regional Medical Center.

e.  2015 – four AUA graduates placed for residency in South Carolina, two at Grand Strand Regional Medical Center, one at Greenville Hospital System/University of South Carolina School of Medicine and one at Spartanburg Regional Healthcare System.

---

[6] Accessible at www.auaalumni.org/residency/ and https://www.auamed.org/graduate-success/residency-placements/

f.  2014 – three AUA graduates were placed for residency in South Carolina, two at Greenville Hospital System/University of South Carolina School of Medicine, one in general surgery and one in family medicine.  The third was placed at Palmetto Health Richland.

g.  2013 – one AUA graduate was placed for residency in South Carolina at Spartanburg Regional Healthcare.

h.  2011 – two AUA graduates were placed for residency in South Carolina, one at AnMed Health and another at Greenville Hospital System/University of South Carolina School of Medicine.

i.  Graduate residence placements for 2007-2010 graduates are shown in a single list, reflecting three residence placements at AnMed Health in Anderson, South Carolina, one at McLeod Regional Medical Center in Sumter, and two at Spartanburg Regional Healthcare Systems.[7]

It is reasonable to infer and assume for benefit of Plaintiff in consideration of this motion that such a continuous history of placement of graduates into the state of South Carolina was the product of intentional communications and actions by Defendant AUA which were with entities and persons knowingly and obviously located in South Carolina.  Such actions constitute relevant contacts with this jurisdiction, as the same were directed towards the professional development of students while attending Defendant AUA, and Plaintiff has complained of acts by Defendant that have impaired and denied the same professional development assistance and opportunities for Plaintiff.

Emily is informed and believes that the existing South Carolina contacts to which Defendant AUA admits, as well as the existing contract with Voorhees College which seeks to

---

[7]  The AUA Alumni Residence Placement website does not list residency placements for AUA graduates prior to 2007.

funnel students from Voorhees to AUA, and other advertised contacts from AUA's own website that publicly tout graduate and professional connections to this state establish sufficient minimum contacts to deny the Motion to Dismiss at this stage.

Even if those connections and contacts referenced above were insufficient on their own, however, they indicate the likelihood of additional information and contacts which would be disclosed via even a brief period of discovery. Accordingly, should the detailing of Defendant AUA's contacts with South Carolina be deemed insufficient for this Court to deny the Motion to Dismiss at this stage, however, even while construing the evidence in a light most favorable to Emily, Emily requests that she be granted the right to engage in discovery solely for purposes of determining facts relevant to the position advanced by Defendant AUA that it lacks sufficient contacts in South Carolina.

## SCOPE OF DISCOVERY SOUGHT

The district court may order jurisdictional discovery when there is reason to believe information that would be sought in jurisdictional discovery would aid the court in the personal jurisdiction analysis. *Carefirst of Maryland In. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). The court has broad discretion in determining whether jurisdictional discovery may be conducted. *Schmitigal v. Twohig,* 413 F.Supp.3d 458 (D.S.C.), citing *Carefirst* and *McLaughlin v. McPhail*, 707 F.2d 800 (4th Cir. 1983).

> It is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

*Young v. F.D.I.C.,* 103 F.3d 1180 (4th Cir. 1997), citing *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed2d 1283 (1958).

In light of the misleading statement by the agent for Defendant AUA, claiming AUA has no contacts with South Carolina when otherwise providing evidence of such contacts beyond that which has been presented by Plaintiff, Emily asserts that additional discovery would be appropriate, both as to Defendant AUA and third parties, to gather facts sufficient to further establish the extent of Defendant AUA's contacts with South Carolina.

## CONCLUSION

Wherefore, Emily moves that the motion to dismiss be denied.  In the alternative, Emily requests an order permitting her to engage in jurisdictional discovery solely on the issue of Defendant AUA's contacts with South Carolina for purposes of providing a complete record upon which this Court can address the claim by Defendant AUA that it lacks sufficient contacts with South Carolina to allow this Court to exercise jurisdiction over it for purposes of this action.

Respectfully submitted,

s/ Desa Ballard
Desa Ballard (ID# 1179)
Harvey M. Watson III (ID# 9271)

**BALLARD & WATSON**
226 State Street
West Columbia, SC  29169
Telephone 803.796.9299
Facsimile 803.796.1066
desab@desaballard.com
harvey@desaballard.com

ATTORNEYS FOR PLAINTIFF

March 4, 2021