# EXHIBIT A

# Mr. Sclafani's Supplemental Affidavit

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Emily Doe, | C/A No. 4:20-cv-04445-JD |
| Plaintiffs | |
| v. | |
| American University of Antigua, Inc., | SUPPLEMENTAL AFFIDAVIT OF LEONARD A. SCLAFANI, ESQUIRE |
| Defendants. | |

Personally appeared before me the undersigned, who having been sworn, deposes and states, under penalty of perjury, that:

1. I read Plaintiff's Response to Defendant American University of Antigua's ("AUA") Motion to Dismiss in which it was alleged that my previously filed Affidavit [Dkt. No. 15-2] is "unreliable" and "biased" because I am "not an employee of AUA" but instead "an employee of another company who acts as legal counsel for AUA." (Plaintiff's Response at 2). In response to Plaintiff's allegations, I submit the following:

    a. In my capacity as Senior Vice President and General Counsel for Manipal Education Americas, LLC, I have provided legal services to AUA since 2008.

    b. As part of that representation of AUA, I have intimate, first-hand knowledge of, and involvement with, every aspect of the administration of AUA, its operation, and AUA's Medical Doctor (M.D.) Program.

    c. In particular, I am responsible for oversight of, and provide counsel to, AUA's Professional Standards Committee ("Committee") its conduct and operations. The Committee is referenced at ¶ 40 of the Plaintiff's Complaint [Dkt. No. 1].

d. I provide training, guidance, and counsel to the Committee. I wrote the Committee's rules, regulations, and policies and am responsible for ensuring that those regulations, rules, policies and practices are carried out by AUA.

e. I provide guidance and counsel to AUA's President with respect to matters involving the Committee, AUA's ethical requirements, and codes of conduct.

f. I provide guidance and counsel to AUA's President on cases in which students (such as the Plaintiff) appeal disciplinary sanctions imposed upon them as a result of a recommendation by the Committee and/or determination of the University's Deans.

g. I am responsible for oversight and approval of all contracts (other than routine, repeat purchase orders for office supplies and such) into AUA enters into. My written sign off is required before anyone at AUA executes and/or otherwise enters into any contract.

h. Given my responsibilities, it is my duty to know, and I do know, where AUA has employees and offices and does and/or transacts business. I am intimately familiar with AUA's personnel, both professional and lay, academic and administrative. I work with most of them on a daily basis.

i. As a result, I know that AUA has no offices or personnel, whether employees, independent contractors, agents or servants, officers or directors who provide any services for AUA in South Carolina.

j. I know that neither Dr. Robert Mallin, M.D. nor Dr. Kim Mallin, M.D. perform any duty, service, responsibility, and/or business for or on behalf of AUA, or within the scope of their employment for AUA, in the State of South Carolina.

k. With respect to the question raised by Plaintiff as to whether AUA has affiliation agreements with hospitals in South Carolina at which AUA students are trained in the

Clinical Sciences through clerkships provided by those hospitals, it is my responsibility to review and approve all affiliation agreements, to negotiate them, either directly with the hospitals or through MEA or AUA administrators and to insure that they both meet the US Department of Education's requirements and are approved by the Department. I also must insure that they will satisfy licensing requirements of State Medical Boards and of AUA's accreditors.

l. I also am responsible for insuring that AUA's students can legally rotate in clerkships under the laws of each State in which it is desired that AUA students do clerkships.

m. I, therefore, have personal knowledge as to with which hospitals AUA has affiliation agreements and where they are located.

n. From this knowledge, I know that AUA has no affiliation agreements with any hospitals in South Carolina and does not educate its students in that State with the single exception that AUA entered into a one time, one student agreement with Grand Strand Hospital, Myrtle Beach, South Carolina in order to accommodate the request of Plaintiff Emily Doe to do an elective clerkship at that otherwise unaffiliated hospital.

o. Like most United States medical schools, AUA permits its clinical students to do elective rotations at teaching hospitals with which it has no affiliation in order to accommodate various interests that its students might have such as that the unaffiliated hospital has a residency program that the student is interested in for his/her post graduate residency training and wishes to connect with the hospital to see if he/she and the hospital are a good fit, or that the hospital is respected in a medical specialty or subspecialty that is no available at hospitals with which AUA is affiliated and in which the student is interested in practicing after graduation.

p. In the case of AUA's affiliation agreement with Grand Strand Hospital, AUA accommodated the request of Plaintiff to allow her to rotate in an elective rotation in anesthesiology at Grand Strand Hospital.

q. Because it has a residency program in that medical specialty, AUA was willing to allow Plaintiff to rotate at the hospital for that rotation and, to this end, requested that it execute an affiliation agreement on AUA's standard form.

r. The hospital refused AUA's request and, instead, offered its own Student Implementation Letter that includes an addition that expressly provides that the Letter would be applicable only for the elective clerkship at it had agreed to provide for Plaintiff.

s. I know first-hand all of the above because it was my responsibility to approve the Student Implementation Letter before AUA signed it.

2. Attached as Exhibit 1 to this Affidavit is the "Memorandum of Understanding between Voorhees College and AUA ("MOU"). In capacity as outside counsel, I approved of this MOU.

   a. While it is the case that AUA did enter into such an MOU, a review of the document evidences that it is nothing more than what is known in the field of education as an "articulation agreement" under which one school, in this case AUA, agrees to accept into its school students from another school or to give credit to students for coursework completed in another school.

   b. In this case, as is evident from the Voorhees College MOU, all that AUA and Voorhees College agreed to is that, if graduates of Voorhees College applied to AUA and if they

satisfied AUA's admissions criteria, they would be accepted into AUA's M.D. program and receive small scholarship funds and other minor financial benefits.

c. Under this MOU, AUA is not required to provide any goods or services in South Carolina.

d. I know the foregoing because I am responsible for approval of articulation agreements into which AUA enters and, when needed, the negotiation of the terms of them. I drafted the template used for them.

FURTHER AFFIANT SAYETH NAUGHT this 10th day of March, 2021.

Leonard A. Sclafani, Esq.

Sworn to and subscribed before me this 10 day of March, 2021.

Notary Public

Craig Hauser
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 01HA6334620
Qualified in New York County
Commission Expires December 21, 2023