**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Emily Doe,<br><br>  Plaintiff,<br><br>vs.<br><br>American University of Antigua Inc.,<br><br>  Defendant. | C.A. No. 4:20-cv-04445-JD<br><br>**DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND/OR MOTION TO QUASH THIRD PARTY SUBPOENAS AND MEMORANDUM IN SUPPORT** |

Defendant American University of Antigua Inc. ("AUA" or "Defendant"), by and through undersigned counsel, hereby moves this Court, pursuant to Federal Rules of Civil Procedure 26 and 45, for a Protective Order and/or Order Quashing eleven (11) Rule 45 *subpoenas duces tecum* served on non-parties by Plaintiff Emily Doe ("Plaintiff"), purportedly in connection with "limited discovery" on personal jurisdiction in the above-captioned case.

**BACKGROUND AND PROCEDURAL HISTORY**

This is a breach of contract and unfair trade practices case filed by Plaintiff against her Antiguan medical school. The essence of Plaintiff's claim is that she was not given proper due process in connection with an AUA disciplinary proceeding that arose as a result of Plaintiff's submission to AUA of a falsified drug screen as part of the documentation required to participate in a clinical clerkship at a teaching hospital during her medical education.

Defendant AUA filed a motion to dismiss Plaintiff's Complaint in its entirety on February 22, 2021, based on lack of personal jurisdiction as well as *forum non conveniens* (Dkt. No. 15), to which Plaintiff responded on March 3, 2021 (Dkt. No. 17). Defendant filed a Reply in Support of the Motion to Dismiss on March 11, 2021. (Dkt. No. 18). Defendant also filed a Response Opposing Plaintiff's Motion to Proceed Using a Pseudonym on February

3, 2021 (Dkt. No. 11), a motion which was filed by Plaintiff on December 28, 2021—before AUA was ever served with the Complaint (Dkt No. 5).

On June 15, 2021, the Court scheduled a hearing on both motions for June 24, 2021. At the hearing, Ms. Ballard appeared on behalf of Plaintiff, and Mr. Macaulay argued on behalf of Defendant AUA. (Dkt. No. 23). The Court took the motions under advisement after the hearing, and on June 30, 2021 entered a Text Order "regarding Defendant's Motion to Dismiss Plaintiff's Complaint," which stated that "Counsel for Plaintiff [was] directed to serve written discovery requests on Defendant within 14 days [of the Text Order]" and granted "60 days to conduct *limited jurisdictional discovery* as it pertains to facts regarding *Defendant AUAs contacts with South Carolina.*" (Dkt. No. 24) (emphasis added).

Plaintiff served fifty-two (52) purported "special interrogatories" upon Defendant on July 14, 2021. Defendant objected to nearly all of the discovery requests for various reasons, as outlined in a meet and confer letter sent to Plaintiff's counsel on July 28, 2021. A telephone status conference was then held by the Court on August 10, 2021 regarding the discovery, in which Ms. Ballard was present on behalf of Plaintiff, and Ms. Clark and Mr. Macaulay argued on behalf of Defendant AUA. During that telephone conference, the parties discussed with the Court the confines of relevant, limited discovery—which all agreed should be narrowly focused on the issue of personal jurisdiction and should aim to obtain information material to that issue alone.

Among the reasonable limits and scope of discovery on personal jurisdiction discussed was an appropriate time frame for discovery requests, which the Court noted was likely three (3) years as opposed to the five (5) and ten (10) year lookbacks included in Plaintiff's first set of discovery. After the conference concluded, the Court entered a minute entry noting that "Plaintiff shall have ten (10) days to serve Defendant with *revised discovery related to personal jurisdiction.* The parties also agreed to meet and confer in an attempt to resolve the

outstanding discovery dispute."[1] (Dkt. No. 27) (emphasis added). During the conference, the Court directed Plaintiff to redraft the first set of discovery requests and noted that the discovery needed to be more narrowly focused on information relevant to the issue of personal jurisdiction.

On Monday, August 23, 2021, Plaintiff's counsel's office sent an email to Defendant's counsel, with copies of the eleven subpoenas at issue in the instant Motion. The email stated: "Please see the attached subpoenas that **were served on Friday afternoon [August 20]**."

---

[1] Despite the Court's directive that the parties meet and confer regarding the scope of discovery after the August 10 telephone conference, there was no consultation had between counsel for the parties to discuss and narrow the scope of Plaintiff's discovery requests that are supposed to be aimed at personal jurisdiction and potential contacts of Defendant AUA with South Carolina (if any). (*See* Dkt. No. 27). Defense counsel sought to schedule a telephone conference, but Plaintiff's counsel did not respond. (*See* Email correspondence between counsel, attached as Exhibit C).

As no discussion was had, no agreement was reached about a reasonable scope of jurisdictional discovery. Plaintiff's counsel then effectively served the same discovery requests once more on August 20, 2021, but the "revised" set includes many of the "interrogatories" in the form of requests to produce (although the number of interrogatories still exceeds that permitted under Fed. R. Civ. P. 33). A majority of the discovery requests use the same substantive language copied and pasted from the first set. AUA maintains its objections to the discovery requests to the extent the discovery is the same, but intends to respond, including listing specific objections, as it is counsel's understanding that this is the preferred way to proceed based on the discussion during the telephone conference. It is worth noting, however, that Plaintiff addressed zero and remedied virtually none of the Defendant's original objections in creating the "new" discovery requests. Plaintiff's counsel offered to: (1) take the word "airplane" out of Interrogatory 14 (which she agreed to do even before the telephone conference); and (2) reduce the time period from 10 to 6 years (despite the Court's suggestion during the conference that a reasonable time period would likely be 3 years).

All other wording is essentially unchanged, and additional requests were included. Defendant's counsel notes that efforts were made to resolve these issues in a timely and efficient manner by bringing attention to the overbreadth of the requests and other objections on the front end, hoping to avoid the potential for a time-consuming motions and briefing process—and then by asking to discuss the objections with opposing counsel over the phone. However, if the same discovery is served, the same objections will be made. (*See* Plaintiff's second set of discovery requests, including interrogatories and requests to produce, attached as Exhibit D). Importantly, much of the information sought in the discovery issued to AUA is also sought by the subpoenas that are the subject of the instant motion, thus demonstrating the duplicitous and cumulative nature of the subpoenas that are the subject of the instant motion.

3

(Exhibit A) (emphasis added). Each of the subpoenas are also dated August 20, 2021. Prior to receiving that email, Defendant was entirely unaware of Plaintiff's intention to issue third party subpoenas during this limited jurisdictional discovery period. Defendant was provided with no notice, not even a hint, that Plaintiff intended to serve these subpoenas to third parties. The appropriateness of third party discovery, including Rule 45 subpoenas to non-parties, was also never raised or even mentioned by Plaintiff's counsel in the conference with the Court, during which the parties discussed what discovery in this case would look like in the coming weeks.[2] Defendant now seeks a Protective Order quashing these subpoenas.[3]

Plaintiff has already served the eleven (11) *subpoena duces tecum* on the following non-parties[4]:

1. University of South Carolina School of Medicine – Upstate (addressed to Jeffrey Perkins) in which she seeks:
    All communications, including email, with any agent or employee of American University of Antigua and/or Manipal Education Americas, LLC including but not limited to Michael Panka Kouandijo from 2016 to present, including but not limited to, documents related to seeking or obtaining permission for medical students from American University of Antigua to participate in clinical clerkships, affiliated or unaffiliated or to MATCH for residencies from students/graduates from American University of Antigua. Please redact any

---

[2] Defendant did not receive reasonable notice and copies of the eleven subpoenas before they were served on the parties to whom they were directed, as required by Federal Rule of Civil Procedure 45(a)(4), which expressly requires that <u>before</u> serving a Rule 45 subpoena, notice and a copy <u>must</u> be served on all parties to the case. The email from Plaintiff's counsel's office made clear, as do the dates on the subpoenas, that they were served and/or transmitted before notice was provided to Defendant. Plaintiff's counsel disagrees that the subpoenas were not timely provided to Defendant. (*See* Email correspondence between counsel, attached as Exhibit E; *see also* Exhibit A (email from Plaintiff's counsel's office)). Defendant contends that it is entitled to a protective order quashing the 11 subpoenas for this additional reason.
[3] The Rule 45 subpoenas are only the latest in Plaintiff's improper use of discovery, who throughout this case has demonstrated a pattern of harassment and oppression of Defendant with discovery demands that are grossly overbroad. Plaintiff's requests, through the subpoenas and otherwise, are not reasonably calculated to lead to discovery that is material to the limited issue pending before the Court—personal jurisdiction. This includes the eleven subpoenas that are the subject of the instant motion, as well as Plaintiff's Requests for Production of Documents and "Amended Special Interrogatories on Personal Jurisdiction," which remain overly broad and irrelevant. (*See* Exhibit D).
[4] Copies of the eleven subpoenas AUA seeks to quash are attached hereto as Exhibit B.

4

   protected by HIPAA as well as any student/graduate or patient personally identifying information as defined by S.C Code Ann. Section 30-2-30(1).

2. University of South Carolina School of Medicine – Midlands (addressed to Jeffrey Perkins) in which she seeks:
      All communications, including email, between any agent or employee of MUSC with any agent or employee of America University of Antigua and/or Manipal Education Americas LLC, from 2016 to present, including but not limited to clinical clerkships or interviews or application for MATCH for residencies from students/graduates from American University of Antigua, including but not limited to Kathleen Jackson or Brintha Vasagar. Also, any and all documents, including communications and to or from or related to Dr. Robert Mallin from 2016 to the present including any research papers in pre-publication status. Please redact any protected by HIPAA as well as any student/graduate or patient personally identifying information as defined by S.C. Code Ann. Section 30-2-30(1).

3. Grand Strand Regional Medical Center – Family Medicine Residency Program (addressed to c/o CT Corporation System) in which she seeks:
      All communications, including email, with any agent or employee of American University of Antigua and/or Manipal Education Americas, LLC including but not limited to Michael Panka Kouandijo from 2016 to present, including but not limited to, documents related to seeking or obtaining permission for medical students from American University of Antigua to participate in clinical clerkships, affiliated or unaffiliated or to MATCH for residencies from students/graduates from American University of Antigua. Please redact any protected by HIPAA as well as any student/graduate or patient personally identifying information as defined by S.C Code Ann. Section 30-2-30(1).

4. Grand Strand Regional Medical Center, Columbia (addressed to c/o CT Corporation System) in which she seeks:
      All communications, including email, with any agent or employee of American University of Antigua and/or Manipal Education Americas, LLC from 2016 to present, including but not limited to, documents related to seeking or obtaining permission for medical students from American University of Antigua to participate in clinical clerkships, affiliated or unaffiliated or to MATCH for residencies from students/graduates from American University of Antigua. Please redact any protected by HIPAA as well as any student/graduate or patient personally identifying information as defined by S.C. Code Ann. Section 30-2-30(1).

5. Prisma Health (addressed to c/o CT Corporation System) in which she seeks
      All communications, including email, with any agent or employee of American University of Antigua and/or Manipal Education Americas, LLC including but not limited to Michael Panka Kouandijo from 2016 to present, including but not limited to, documents related to seeking or obtaining permission for medical students from American University of Antigua to participate in clinical clerkships, affiliated or unaffiliated or to MATCH for residencies from students/graduates from American University of Antigua. Please redact any

protected by HIPAA as well as any student/graduate or patient personally identifying information as defined by S.C Code Ann. Section 30-2-30(1).

6. Voorhees College (addressed to Dr. Ronnie Hopkins) in which she seeks:
   All communications, including emails, from any agent of Voorhees College including but not limited to Dr. Ronnie Hopkins and Dr. W. Franklin Evans, by and between any agent or employee of American University of Antigua and/or Manipal Education Americas, LLC from 2016 to present, including any communications regarding a proposed or executed partnership or memorandum of agreement between Voorhees and American University of Antigua.

7. Campbell University/Conway Medical Center (addressed to Bret Barr) in which she seeks:
   All communications, including email, with any agent or employee of American University of Antigua and/or Manipal Education Americas, LLC including but not limited to Michael Panka Kouandijo from 2016 to present, including but not limited to, documents related to seeking or obtaining permission for medical students from American University of Antigua to participate in clinical clerkships, affiliated or unaffiliated or to MATCH for residencies from students/graduates from American University of Antigua. Please redact any protected by HIPAA as well as any student/graduate or patient personally identifying information as defined by S.C Code Ann. Section 30-2-30(1).

8. Voorhees College (addressed to c/o Headquarters) in which she seeks:
   All communications, including emails, from any agent of Voorhees College including but not limited to Dr. Ronnie Hopkins and Dr. W. Franklin Evans, by and between any agent or employee of American University of Antigua and/or Manipal Education Americas, LLC from 2016 to present, including any communications regarding a proposed or executed partnership or memorandum of agreement between Voorhees and American University of Antigua.

9. Grand Strand Regional Medical Center, Myrtle Beach (addressed to Attn: Marsha Myers) in which she seeks:
   All communications, including email, with any agent or employee of American University of Antigua and/or Manipal Education Americas, LLC including but not limited to Michael Panka Kouandijo from 2016 to present, including but not limited to, documents related to seeking or obtaining permission for medical students from American University of Antigua to participate in clinical clerkships, affiliated or unaffiliated or to MATCH for residencies from students/graduates from American University of Antigua. Please redact any protected by HIPAA as well as any student/graduate or patient personally identifying information as defined by S.C Code Ann. Section 30-2-30(1).

10. Medical University of South Carolina (addressed to: Attn: Stewart Mixon, MA) in which she seeks:
    All communications, including email, between any agent or employee of MUSC with any agent or employee of America University of Antigua and/or Manipal

>   Education Americas LLC, from 2016 to present, including but not limited to clinical clerkships or interviews or application for MATCH for residencies from students/graduates from American University of Antigua, including but not limited to Kathleen Jackson or Brintha Vasagar. Please redact any protected by HIPAA as well as any student/graduate or patient personally identifying information as defined by S.C. Code Ann. Section 30-2-30(1).

11. Medical University of South Carolina (addressed to: c/o MUSC Office of the General Counsel) in which she seeks:
>   All communications, including email, between any agent or employee of MUSC with any agent or employee of America University of Antigua and/or Manipal Education Americas LLC, from 2016 to present, including but not limited to clinical clerkships or interviews or application for MATCH for residencies from students/graduates from American University of Antigua, including but not limited to Kathleen Jackson or Brintha Vasagar. Please redact any protected by HIPAA as well as any student/graduate or patient personally identifying information as defined by S.C. Code Ann. Section 30-2-30(1).

It is clear from even a cursory review of the above that the subpoenas to various hospitals and academic institutions are excessive, overly broad, irrelevant, cumulative and duplicitous, and/or possibly intended to annoy, harass, harm, and embarrass Defendant AUA. Subpoenas to third parties are not appropriate at this stage, and are outside the scope of the Court's Text Order granting limited discovery on personal jurisdiction. The information sought is also wholly irrelevant to the personal jurisdiction issue presently before this Court. Further, the subpoenas are overly broad, seeking information about non-party Manipal in addition to AUA, and they seek information going back nearly six years.

Not only do the subpoenas fall outside the scope of limited jurisdictional discovery, but their use is disproportionate to the needs of the case at this time. Defendant AUA respectfully requests that the Court issue a protective order quashing the eleven third party subpoenas, and precluding Plaintiff's use of Rule 45 subpoenas during this limited discovery period.

**LEGAL STANDARD**

The scope of information available through Rule 45 subpoenas is coextensive with that of Rule 26. *See Castle v. Jallah*, 142 F.R.D. 618, 620 (E.D. Va. 1992) (ECF No. 64 at 6).

Generally, "the scope of discovery is that . . . [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Matters outside that scope *are not discoverable*." *Garrison Prop. & Cas. Ins. Co. v. Rickborn*, No. 2:15-CV-4379-PMD, 2016 WL 9649869, at *1–2 (D.S.C. Oct. 11, 2016) (emphasis added) (citing *WLR Foods, Inc. v. Tyson Foods, Inc.*, 65 F.3d 1172, 1184-86 (4th Cir. 1995)). Here, we are in a period of "limited jurisdictional discovery" on the very narrow issue of personal jurisdiction.

Under Rule 26(c), "a party may move for a protective order to protect itself from annoyance, embarrassment, oppression, or undue burden or expense, regardless of whether the moving party is seeking to prevent disclosure of information by a nonparty, as long as the moving party can tie the protected information to an interest listed in the rule," as Defendant can here. *HDSherer LLC v. Nat. Molecular Testing Corp.*, 292 F.R.D. 305, 307-08 (D.S.C. 2013); *see also Kappel v. Garris*, No. 2:19-cv-498-DCN, 2020 WL 707123, at *2 (D.S.C. Feb. 12, 2020) ("[T]he court need not consider whether this rule of law regarding [Rule 45] would apply . . . because [defendant] seeks, in the alternative, a protective order, and courts generally find that a party can seek a protective order for a third party subpoena.") (citing *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 240 n.2 (E.D. Va. 2012) (holding that a party without standing to quash a nonparty subpoena still has standing to seek a protective order over the documents sought by the subpoena)); *Charleston Equities, Inc. v. Winslett*, 2018 WL 5778301, at *2 (D.S.C. Jan. 24, 2018) (same).

The Federal Rules implicate the legitimate privacy interests of litigants, and Rule 26 provides that a court, upon a showing of good cause, may enter a protective order to protect any party to a lawsuit from annoyance or embarrassment. Fed. R. Civ. P. 26(c). Additional limitations are imposed on discovery, including Rule 45 subpoenas, by Rule 26(b)(2)(C) which provides, in relevant part:

8

> On motion or on its own, the court _must_ limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is *unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;*
> (ii) the party seeking discovery has had *ample opportunity to obtain the information by discovery in the action*; or
> (iii) the *burden or expense of the proposed discovery outweighs its likely benefit*, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

Moreover, under Rule 45(d)(3)(A)(iv), a court "_must_ quash or modify" a non-party subpoena that "subjects a person to undue burden," "fails to allow a reasonable time to comply," or "requires disclosure of privileged or other protected matter." Rule 45 imposes on counsel the responsibility of taking "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena," and absent compliance with that duty, a district court must impose sanctions on a party or attorney. Fed. R. Civ. P. 45(d)(1).

District courts "have broad discretion 'to decide when a protective order is appropriate and what degree of protection is required.'" *Nix v. Holbrook*, No. 5:13-cv-02173-JMC, 2015 WL 631155, at \*2 (D.S.C. Feb. 13, 2015) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)). Defendants seek a Protective Order from this Court quashing the eleven already-served subpoenas and clarifying that at this stage of the proceeding, third party discovery, including use of Rule 45 subpoenas to non-parties, is not permitted during this limited discovery period into the narrow issue of personal jurisdiction. *See Loc. Access, LLC v. Peerless Network, Inc.*, No. 617CV236ORL40TBS, 2017 WL 7343156, at \*2–3 (M.D. Fla. July 27, 2017) (quashing third party subpoenas and holding that "[u]nder Rule 26(c) [plaintiff] has standing to seek a protective order precluding defendant from obtaining irrelevant discovery from a third-party, or discovery that is beyond the permissible scope of Rule 26").

## **ARGUMENT**

## **AUA IS ENTITLED TO A PROTECTIVE ORDER QUASHING THE SUBPOENAS**

Through Rule 45 subpoenas, which are outside the scope of limited jurisdictional discovery, Plaintiff requests information about individuals that have nothing to do with this lawsuit and nothing to do with possible contacts by AUA with South Carolina, as well as documents that have no relevance to the question of whether this Court has personal jurisdiction over AUA for purposes of Plaintiff's case. The documents sought would not provide further clarity on the personal jurisdiction issue, but even if they would, the same information could be obtained through discovery to AUA directly. Instead, Plaintiff's subpoenas to third parties are cumulative and duplicative, and have the tendency to embarrass, oppress, and annoy AUA.

### **A. RULE 45 SUBPOENAS ARE OUTSIDE THE SCOPE OF THE TEXT ORDER GRANTING LIMITED JURISDICTIONAL DISCOVERY INTO POSSIBLE CONTACTS BY AUA WITH SOUTH CAROLINA**

Plaintiff's third party subpoenas are outside the intended scope of the Court's Text Order allowing limited jurisdictional discovery on personal jurisdiction. (*See* Dkt. No. 24). It is well-established that the scope of discovery is not without limits. *See* Fed. R. Civ. P. 26(c). Third party discovery, particularly through use of Rule 45 *subpoenas duces tecum*, is a powerful tool, and is one that is unnecessary in this case given the narrow jurisdictional question before the Court. Issuance of Rule 45 subpoenas at this stage is also improper because there has been no determination of personal jurisdiction at this point. Indeed, the Court granted a limited time period for limited jurisdictional discovery into possible contacts by AUA with South Carolina *for purposes of personal jurisdiction.*

That narrow issue does not require use of Rule 45 subpoenas, and the Text Order does not state that such third party discovery is permitted. "Subpoenas are powerful tools through which litigants may invoke the power of the court," and such broad third party discovery is

unnecessary at this time and disproportionate to the needs of this case, particularly given the overly broad and irrelevant requests. *Reiman v. Does 1-1000*, No. C07-5130RJB, 2007 WL 1575307, at *2 (W.D. Wash. May 22, 2007). Further, the subpoenas improperly give the impression of legitimacy of this case to third parties, suggesting that personal jurisdiction over AUA exists. That is the very issue which Defendant opposes here.

By serving third parties with subpoenas in the name of the Court, commanding production of a wide swath of records, communications, and documents, there is an implication that this case is a viable lawsuit with potentially meritorious claims against AUA, made by a person entitled to proceed under a pseudonym (which is ordinarily reserved for the rarest and most sensitive or egregious of cases). Service of Rule 45 subpoenas also tacitly represents that the Court has jurisdiction over AUA. But personal jurisdiction has not yet been decided, and subpoenas should only issue if and when there has been a determination that this Court has personal jurisdiction over AUA. After all, Rule 45 subpoenas invoke the "power of the court." Such power should not be invoked to demand that non-parties take action and produce documents if the Court does not have jurisdiction. Rule 45 subpoenas should not be permitted unless and until there is a determination that the Court has jurisdiction over AUA for purposes of this matter, and the parties get beyond limited jurisdictional discovery.

### B. THE ELEVEN SUBPOENAS SHOULD BE QUASHED BECAUSE THEY ARE DUPLICATIVE, OVERBROAD, IRRELEVANT, AND IMMATERIAL TO THE NARROW ISSUE OF PERSONAL JURISDICTION BEFORE THE COURT

Plaintiff's subpoenas should be quashed for the additional reasons that they are overbroad, disproportionate to the needs of this case at this stage, duplicitous and cumulative, irrelevant and immaterial. The subpoenas exceed the scope of permissible

11

discovery because the information sought by Plaintiff, even if produced, will not make the existence of personal jurisdiction over AUA more or less likely.

### 1. Subpoenas are Duplicative and Cumulative of Discovery to AUA, and the Information Could Be Obtained Through Less Burdensome Means

The eleven subpoenas should be quashed, and any additional third party subpoenas should be disallowed during jurisdictional discovery for the additional reason that they are unnecessary, cumulative, and duplicative. Plaintiff can seek and obtain the same information more easily through other, less burdensome means, which would not have the tendency to annoy or embarrass AUA, including through discovery requests directly to Defendant AUA. *See* Fed. R. Civ. P. 26(b)(2)(C)(i); 26(c).

Cumulative third-party subpoenas are improper where, like here, the same information could be obtained through less burdensome, less costly, and more expeditious avenues. There is no reason to require that non-parties sort through almost six years of such a broad range of irrelevant information, then remove and redact portions protected by HIPAA and various other state and federal laws (especially because the contacts sought will make no difference to the issue of personal jurisdiction) when this information is available by issuance of discovery to AUA.

Moreover, the Rule 45 subpoenas are simply not needed to obtain information about Defendant AUA's contacts with South Carolina in connection <u>with this lawsuit</u> as that information can be obtained through other means. The same information is, or could be, sought in discovery already issued to AUA. There is no need to go to a third party (other than to embarrass or harm AUA). The subpoenas are duplicitous of the information Plaintiff seeks through ordinary civil discovery to Defendant. For example, any information sought from Voorhees in Plaintiff's <u>two</u> Rule 45 subpoenas to the college could be obtained directly through discovery requests to AUA. In fact, Plaintiff has done just that. Plaintiff's Request

12

for Production of Documents number 18 asks AUA to "[p]rovide all written communications between any officer or employee of Defendant and any officer, employee or Board member of Voorhees College at any time since January 2016."[5] (*See* Exhibit D, Plaintiff's Request for Production No. 18). There is simply no reason to serve two subpoenas on third party Voorhees asking for essentially the same information that is sought from AUA. *See Charleston Equities, Inc. v. Winslett*, No. CV 3:17-137-JFA, 2018 WL 5778301, at *6 (D.S.C. Jan. 24, 2018) (quashing eight third party subpoenas and noting that "Rule 26(b) commands that this Court limit discovery when the information sought can be obtained from a more convenient source"); *see also* Fed. R. Civ. P. 26(b)(2)(C).

Where, as here, the documents and information sought are duplicative of that sought from AUA, and where, as here, the documents and information can be obtained through less burdensome means, and where, as here, the information sought is irrelevant to the very issue before the Court, one is left to wonder why Plaintiff would choose to serve subpoenas on third parties, including major academic institutions, universities, and hospitals, if not for the purpose of embarrassing, annoying, harassing, and damaging AUA. In these circumstances, where the discovery is cumulative and the information could be obtained through AUA, Defendant AUA should be granted a Protective Order and the subpoenas should be quashed. *See, e.g.*, *Duenez v. Tidewater Boats, LLC*, No. CV 3:20-972-MGL-SVH, 2021 WL 1947291, at *3 (D.S.C. May 14, 2021); *Meide v. Pulse Evolution Corp.*, No. 3:18-CV-1037-J-34MCR, 2019 WL 1518959, at *6 (M.D. Fla. Apr. 8, 2019).

---

[5] Notwithstanding the fact that the time period for these subpoenas is far more broad than that suggested as reasonable by the Court in the telephone conference.

### 2. Manipal is Not a Party, and its Contacts Are Irrelevant

Moreover, the subpoenas are overbroad and irrelevant to the extent they focus on the contacts of others rather than AUA. Every single subpoena seeks information about both AUA *and Manipal*—and Manipal is not a party to this lawsuit.[6] (*See* Subpoenas at Exhibit B). The Court's Text Order clearly states that limited jurisdictional discovery could be had regarding "*Defendant AUAs* contacts with South Carolina," if any—not Manipal's or any other non-party. (Dkt. No. 24) (emphasis added). The inclusion of third party Manipal in every subpoena request renders the subpoenas overly broad, improper, and irrelevant.

Additionally, none of the eleven subpoenas will provide information that is material to the issue of personal jurisdiction in this case; no matter what comes in response to the subpoenas, it will not impact the question of personal jurisdiction over AUA. The subpoenas should be quashed because they are overly broad and irrelevant by seeking information about contacts by non-party Manipal.

### 3. The Nearly Six Year Lookback Period is Unreasonable

The third party subpoenas request information for an unreasonable and overly broad time frame, and should be quashed for this additional reason. Plaintiff's subpoenas all request that the various third parties, including universities and hospitals, provide information, including "all communications" going back nearly six years. This is an unreasonable time frame that will not contribute any information relevant to personal jurisdiction. This case was filed on December 23, 2020 (Dkt. No. 1), and the claims deal with events that, according to Plaintiff's Complaint, occurred between approximately August and

---

[6] This point was made by Defendant's counsel in the August 10 telephone conference with the Court.

December of 2020. As discussed on the telephone conference with the Court, three (3) years is a more appropriate lookback period, yet each of Plaintiff's subpoenas seek documents and information "from 2016 to present."[7] (*See* Subpoenas at Exhibit B).

Seeking information from third parties from nearly six years ago all the way to present day (about matters and people not relevant to this lawsuit, including about Manipal) serves no purpose in this case, other than to embarrass, harm, and oppress AUA. The requests for information and documents and communications going back six years are overly broad, oppressive and burdensome, and going back that far will not produce anything that makes a difference to the question of personal jurisdiction. The subpoenas should be quashed because the requests are outside the scope of reasonable discovery on personal jurisdiction, including by the overly broad timeframe, and are disproportionate at this stage of the proceeding.

### 4. Subpoenas Seek Information Related to Random Individuals

Plaintiff specifically names several random individuals in the subpoenas. Any information about them is irrelevant to the question of personal jurisdiction in this case. (*See, e.g.*, Exhibit B, Subpoenas to Medical University of South Carolina and Medical University of South Carolina Office of the General Counsel (seeking, in part, *all* communications including but not limited to "interviews or application for MATCH for residencies from students/graduates from American University of Antigua, including but not limited to Kathleen Jackson or Brintha Vasagar" (emphasis added))). Such subpoenas naming these apparently unrelated people have the tendency to harm or embarrass AUA as well as those

---

[7] As another example of this inappropriate timeframe, the two Subpoenas to Voorhees seek information "from 2016 to present." The Voorhees MOU previously raised by Plaintiff in connection with AUA's Motion to Dismiss is dated October 6, 2020, and a copy has already been provided to Plaintiff (and filed with the Court). (*See* Dkt. No. 18-1 (Affidavit), 18-2 (MOU)). It is unreasonable to request from Voorhees documents going back to 2016 through present. Regardless, Defendant maintains that this simple MOU is insufficient for purposes of personal jurisdiction in this case.

15

private individuals—who do not appear in Plaintiff's Complaint, and who are irrelevant to personal jurisdiction over AUA.

### 5. Subpoenas Are Irrelevant to Personal Jurisdiction and Are Overly Broad

Plaintiff's subpoenas are also irrelevant because the majority of documents or information sought, even if it exists, will make zero difference to the question of whether or not this Court has personal jurisdiction over Defendant AUA for purposes of Plaintiff's claims. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (holding that personal "jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction" and in determining jurisdictional questions, "the primary concern is the burden on the defendant").

Not only are these subpoenas embarrassing, annoying, and oppressive to AUA (and potentially to current and former students as well), but they are also irrelevant to personal jurisdiction—in general and to the extent they seek information about random specific individuals. For this Court to have personal jurisdiction over AUA for purposes of the above-captioned case, there must be a connection between AUA's "contacts" with South Carolina and *Plaintiff's claims*. *See Bristol-Myers Squibb*, 137 S. Ct. at 1780.

Many of the subpoenas at issue here include requests for information about other seemingly random people—the information sought is therefore immaterial to the issue of personal jurisdiction for this particular case. No matter what the response to the subpoenas, the question of personal jurisdiction will not be changed because the information is immaterial to that issue. *See Kappel v. Garris*, No. 2:19-CV-498-DCN, 2020 WL 707123, at *2 (D.S.C. Feb. 12, 2020) (quashing third party subpoena and finding that the information sought is not relevant). Moreover, requesting "*all communications*," as each of the eleven subpoenas do, renders the requests overly broad on their face. *See Charleston Equities, Inc.*

16

*v. Winslett*, No. CV 3:17-137-JFA, 2018 WL 5778301, at \*6 (D.S.C. Jan. 24, 2018). AUA therefore requests that the subpoenas be quashed.

### 6. Contacts to Establish Personal Jurisdiction Are Only Relevant When <u>AUA's Contacts</u> with the Forum Are Connected to <u>Plaintiff's Claims in this Case</u>

As set forth in AUA's motion to dismiss (Dkt. No. 15), and as discussed during the August 10 telephone conference, personal jurisdiction requires much more than some random contact with the forum state by a defendant—but instead requires that any contacts by AUA with South Carolina be "case-linked" or connected to Plaintiff's specific claims. *See Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780-81 (2017) (holding that specific personal jurisdiction demands that the lawsuit "arise out of or relate to the *defendant's contacts with the forum*") (emphasis added); *Walden v. Fiore*, 571 U.S. 280, 284 (2014) (holding that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must be the necessary connection with the forum State"); *see also Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) (holding that there was no general jurisdiction over defendant because it was not "at home" in the state, despite the fact that defendant had 2,061 miles of railroad track in the state, and some 2,100 employees in the state).

Plaintiff's actions or conduct or even permanent residency in this state *cannot* be the link or nexus to the forum for purposes of personal jurisdiction. *See Walden*, 571 U.S. at 584. The United States Supreme Court has made clear that it must be the Defendant's contacts with the state that are considered—and the contacts <u>must relate in some way to the claims asserted in that particular case</u>. *See id.*; *Bristol-Myers*, 137 S. Ct. at 1776. The subpoenas do not seek this type of information and, whatever the response to the subpoenas, the responses will have no bearing on the ultimate issue of personal jurisdiction. AUA therefore requests that the Court quash the subpoenas.

### C. A PROTECTIVE ORDER QUASHING THE SUBPOENAS IS WARRANTED BECAUSE THE SUBPEONAS TEND TO EMBARRASS, ANNOY, HARM, AND HARRASS AUA WHILE PLAINTIFF REMAINS PROTECTED UNDER THE BLANKET OF PSEUDONYMITY

The unusual procedural posture of this case, and the ability of Plaintiff "Doe" to use the powerful Rule 45 subpoenas to embarrass and harm AUA, further support a protective order quashing the eleven subpoenas and precluding future use of Rule 45 during jurisdictional discovery.

Plaintiff is currently proceeding in this matter under a pseudonym. In serving the eleven subpoenas on non-parties in the medical community and academic institutions (and addressing them and cover letters to key individuals at those institutions), Plaintiff's true name appears nowhere and she is unnamed in the caption. As such, those third parties, who are now commanded to comply with overbroad requests under power of this Court, are now aware of the pending litigation against AUA, left to presume the Court has jurisdiction, and are left to speculate as to why the Plaintiff is listed as "Doe," which is a "rare dispensation." *Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014) (quoting *James v. Jacobson*, 6 F.3d 233, 238) (4th Cir. 1993)) ("Pseudonymous litigation undermines the public's right of access to judicial proceedings. The public has an interest in knowing the names of litigants.").

This is precisely why the potential harm to a defendant is one of the express factors for courts to consider in connection with a Motion to Proceed Under Pseudonym under *Jacobson*. At this time, Plaintiff is shielded by anonymity, and is using that to—whether intentionally or not—draw into question AUA's good name and reputation in the United States' medical community and sully AUA's hard-earned reputation as a quality medical school on par with medical schools in the United States.

There is a question of whether Plaintiff would have sent the eleven Rule 45 subpoenas to the reputable colleges, universities, medical schools, and others if her true name was listed

18

in the caption of this case. Because she is guarded by anonymity at this point, Plaintiff can serve the overly broad, irrelevant subpoenas without fear of any impact on her own reputation—but the potential to embarrass, annoy, and harm AUA's name and good will remains a possibility—particularly in the medical community where most of its students must go and thrive after obtaining their degree and moving on from AUA. Such a result is improper when it remains an open question whether or not Plaintiff is entitled to proceed under pseudonym—as well as whether this Court has personal jurisdiction over AUA for purposes of Plaintiff's case.

Plaintiff "Doe" should not be permitted to annoy, embarrass, tarnish and harm AUA by taking advantage of the currently pending Motion to Proceed Under Pseudonym giving her, at least at this time, "Doe" anonymous status. "The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused." *Theofel v. Farey–Jones,* 359 F.3d 1066, 1074–75 (9th Cir.2004). A protective order quashing the overly broad subpoenas should issue to protect AUA from the "annoyance, embarrassment, oppression, or undue burden" associated with them. Fed. R. Civ. P. 26(c)(1).

## CONCLUSION

Plaintiff's Rule 45 subpoena requests are outside the intended scope of the Court's Text Order, are cumulative and duplicative because the same documents can be and have been sought through use of ordinary civil discovery requests to AUA, and the subpoena requests have the tendency to embarrass, oppress, and harass AUA. *HDSherer LLC,* 292 F.R.D. at 307.

For the reasons outlined herein, Defendant AUA requests entry of a Rule 26(c) Protective Order quashing the subpoenas at issue or, in the alternative, narrowing their scope. Defendant AUA also requests entry of a Protective Order prohibiting Plaintiff from

disclosing, and/or utilizing any discovery already obtained in response to the subpoenas, and precluding Plaintiff from issuing further Rule 45 *subpoenas duces tecum* during this limited jurisdictional discovery period. Defendant AUA also requests an award of attorneys' fees and costs pursuant to Federal Rules 26, 37, and/or 45.

Pursuant to Fed. R. Civ. P. 26(c)(1) and Local Rule 7.02 (DSC), the undersigned certifies that defense counsel attempted to confer, in good faith, with Plaintiff's counsel, but the parties were unable to resolve this dispute.

/s/ Brittany N. Clark
Brittany N. Clark (Fed. ID No. 12891)
Angus H. Macaulay (Fed. ID No. 5248)
NEXSEN PRUET, LLC
PO Drawer 2426
Columbia, SC 29202
Telephone: (803) 253-8279
bclark@nexsenpruet.com
amacaulay@nexsenpruet.com

*Attorneys for Defendant American University of Antigua, Inc.*

August 30, 2021
Columbia, South Carolina

20