IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Emily Doe ) | Civil Action No.: 4:20-cv-04445-JD |
| Plaintiff ) | |
| vs. ) | **SUPPLEMENTAL** |
| ) | **MEMORANDUM IN OPPOSITION** |
| American University of Antigua Inc., ) | **TO MOTION TO DISMISS** |
| ) | **PERSONAL JURISDICTION** |
| Defendant ) | |
| ) | |

Plaintiff Emily Doe (hereafter "Emily") submits the following in additional argument in opposition to Defendant's Motion to Dismiss, which argues that it lacks sufficient contacts with the State of South Carolina and that it would violate Due Process to require it to litigate the issues presented in this action.[1]

Filed herewith is an affidavit of Plaintiff that attests to the continuing contacts between Emily and South Carolina during her period as an applicant for admission to Defendant AUA. The very facts upon which Emily relies in support of her breach of contract action all occurred while she was in South Carolina, through a contract signed by AUA, earning credit for her AUA diploma. The alleged misconduct, the disciplinary hearing and the ruling all happened while Emily was earning credit for an AUA class in South Carolina.

Emily incorporates the significant factual information submitted previously (ECF 17), which contained general evidence of contacts between Defendant AUA and South Carolina. At the heart of this litigation is the breach of contract by Defendant AUA which Emily contends occurred in connection with the actions that took place in South Carolina, *i.e.,* the submission of

---

[1] Emily reserves all rights under her motion to compel filed on October 5, 2021, which she is informed and believes evidence bad faith by Defendant in failing to participate in discovery as permitted by this Court.

1

an altered[2] drug screen (immediately followed by an accurate drug screen, which was submitted prior to the deadline imposed by AUA). Emily asserts that AUA breached its contract obligations to her by not supplying her with the necessary counseling services that are required in order for AUA to maintain its accreditation with Caribbean Accreditation Authority for Education and in Medicine and Other Health Professions (CAAM-HP). (ECF 1 ¶ 7). These specific contacts are all in South Carolina.

As stated in the complaint, the contract between Emily and AUA required that Emily be provided with academic and student support as well as "confidential counseling and health services," none of which AUA provided and were therefore unavailable to Emily when she was facing a factual crisis <u>while on assignment at Grand Strand</u> and had no resources available to her for counseling. As noted in the Complaint, CAAM-HP requires that accredited medical schools have sufficient facilities for "personal counseling. . .[and] . . . confidential counseling" to "facilitate their adjustment to the physical and emotional demands of medical school and the professional practice that they will enter." (ECF 1 ¶ 15). AUA did not have anything available to assist her, despite its representations to the accreditation agency to the contrary.

As further set forth in the complaint, the events that formed the basis of AUA's breach of contract with Emily occurred in the 2020-time frame. This was only three months before Emily was set to graduate from AUA.

AUA admits that it signed a contract to allow Emily to earn academic credit for rotations at a hospital in Myrtle Beach. What AUA fails to admit is that the contract it signed was with HCA, also known as Health Corporation America. HCA has locations nationwide, including in

---

[2] The drug screen was altered only as to the date. At no time has Emily been in violation of any drug policy of Defendant AUA or the facilities in which she has completed course hours for her graduation from AUA.

South Carolina.  https://hcahealthcareshowsup.com/memorialhealth/patients.[3]  (Affidavit of Emily dated October 6, 2021, Exhibit A to affidavit).  *See also* **Exhibit 1**.

While AUA produced only 88 pages of documents in discovery, it did disclose a copy of the contract it signed with HCA.  The contract permitted Emily to obtain clinical credit for rotations at Grand Strand Medical Center.  **Exhibit 2**.  The correspondence enclosed with the contract reflects that in January 2020, AUA reached out to Grand Strand Medical Center to "enter[] into an affiliation with AUA" so one of its students could perform a "4th year elective" at Grand Strand.  *Id.*  AUA provided Grand Strand with its "form of agreement for your consideration."  On January 21, 2020 AUA signed a contract with Grand Strand, but offered to use whatever contract Grand Strand wished to use for the clinical rotation to facilitate Emily's rotation at Grand Strand.  *Id.*  The agreement signed between AUA and Grand Strand is a standard agreement produced by the Association of American Medical Colleges (AAMC), based in Washington D.C.  *Id*.  *See* www.aamc.org.

The contract itself imposes "responsibilities of the SCHOOL" which are undertaken by a medical school which enters into the AAMC Contract, and identifies Grand Strand Medical Center as the "host agency."  *Id.*  AUA can call it whatever it wants, but it was AUA doing business in South Carolina by arranging for a student to earn course credit at Grand Strand Medical Center.

AUA's production also disclosed its communications with Voorhees College.  Those communications make clear that it contracted with Voorhees during the same time period as the events that led to Emily's disciplinary proceeding and that AUA voluntarily reached out to Voorhees for an agreement.  **Exhibit 3**.  In other words, Voorhees did not knock on AUA's door;

---

[3] HCA's website states that it "comprised of 187 hospitals and 2,000+ sites of care in 20 states and the United Kingdom."  *Id.*  South Carolina locations are identified by HCA as Colleton Medical Center, Grand Strand Medical Center, Moncks Corner Medical Center, Summerville Medical Center and Trident Medical Center.  *Id.*

it was the other way around. AUA can try to minimize the contact, but it is a contact for purpose of soliciting students from South Carolina.

Lastly, the affidavit of Emily is attached. **Exhibit 4**. It provides a timeline of Emily's actions, all of which were taken in South Carolina as well as the communications with AUA. The affidavit will show without dispute that the misconduct in which she was charged occurred in South Carolina. The interviews, the hearing and everything Emily did related to the matters of her claim in this action for breach of contract occurred while she was in South Carolina.

"To demonstrate personal jurisdiction over a defendant. . . a plaintiff must show: (1) a State's general jurisdiction over the defendant by demonstrating the defendant's continuous and systematic contact with the state.. . *Sneha Media & Extm't LLC v. Associate Broad Co.,* 911 F.3d 192, 198(4th Cir. 2018). Specific jurisdiction exists when "the defendant purposely established minimum contacts in the forum state such that it should reasonably anticipated being hauled into court there on a claim arising out of those contacts." *Id.*

As Emily has asserted throughout, this Court has personal jurisdiction over AUA both on the basis of general jurisdiction and special jurisdiction. The very acts that constitute the breach of contract by AUA and which form the basis of this suit occurred while Emily was earning course credit, arranged by AUA, at a hospital in South Carolina, and providing drug screens obtained by labs in South Carolina.

Emily's original memorandum in opposition details the numerous placements by AUA of its graduates for residencies (at least 1 placement every year for approximately ten years). AUA touts itself as based on the American system of medical school, yet wants to hide from South Carolina's jurisdiction when it purposely availed itself of activity (and income) from the State. AUA employs multiple faculty members who are licensed to practice medicine in South Carolina,

faculty members who own real estate in South Carolina and likely spent time in South Carolina, working for AUA, during the COVID shutdown. Emily cannot establish the last statement, because of the voluminous and bad faith objections that AUA made to her discovery requests, but she is informed and believes that it is true. AUA cannot honestly deny that at least two members of its faculty worked from locations in South Carolina while performing work for AUA.

At the same time AUA was facilitating Emily's earning of course credit in South Carolina, it was also soliciting business from Voorhees College in South Carolina. At the same time AUA was filing charges against Emily for actions that took place in South Carolina, Emily responded and participated fully in the proceedings from South Carolina. Emily was in South Carolina throughout the entire disciplinary process.

Emily would have much more to add, had Defendant complied with discovery requests, but they did not. As pointed out in Emily's Motion to Compel filed yesterday (ECF 36), Defendant knowingly and intentionally refused to respond to any discovery based on the definition of AUA that included Manipal Education Americas, LLC, and, by AUA's own admission, effectively runs all aspects of the school other than the provision of medical education. *See* Affidavit of Leonard Sclafani (ECF 18-1).

For the reasons set forth in her initial memo in opposition to motion to dismiss, and as supplemented with this memorandum and attachments, Emily prays that the motion to dismiss based on lack of personal jurisdiction over AUA be denied.

    Respectfully submitted,

    s/ Desa Ballard
    Desa Ballard (ID# 1179)
    Harvey M. Watson III (ID# 9271)
    **BALLARD & WATSON**
    226 State Street
    West Columbia, SC  29169

Telephone 803.796.9299
Facsimile 803.796.1066
desab@desaballard.com
harvey@desaballard.com

ATTORNEYS FOR PLAINTIFF

October 6, 2021