**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | |
|---|---|
| Emily Doe,<br><br>   Plaintiff,<br><br>v.<br><br>American University of Antigua, Inc.,<br><br>   Defendant. | C/A No. 4:20-cv-04445-JD<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S SUPPLEMENTAL RESPONSE OPPOSING DEFENDANT'S MOTION TO DISMISS** |

Defendant, American University of Antigua, Inc. ("Defendant" or "AUA"), hereby submits the following Reply to Plaintiff Emily Doe's (Plaintiff") October 6, 2021 Supplemental Response in Opposition (Dkt. Nos. 38 & 39)[1] to AUA's Motion to Dismiss (Dkt. No. 15). For the reasons set forth herein, as well as in AUA's previously filed Motion to Dismiss and Reply in Support (Dkt. No. 18), AUA respectfully requests that this Court dismiss Plaintiff's Complaint because the Court lacks personal jurisdiction over AUA. AUA also requests that the Plaintiff's Complaint be dismissed on the basis of *forum non conveniens*.

### I. **INTRODUCTION**

Plaintiff has failed to make a *prima facie* showing of personal jurisdiction, and cannot make such a showing, because this Court does not have personal jurisdiction over Defendant AUA. Despite the Court's generous allowance of a period for jurisdictional discovery, as well as the opportunity for Plaintiff to supplement her original Response (Dkt. No. 17), Plaintiff has essentially submitted nothing new by way of evidence of contacts nor argument to support her contention that this Court has personal jurisdiction over AUA.

Plaintiff's "Supplemental" Response to AUA's Motion to Dismiss includes five exhibits and discussion of the same in her briefing. Plaintiff appears to contend that she has now made a

---

[1] Plaintiff filed an "Additional Attachment" to the Supplemental Response on October 7, 2021. (Dkt. No. 39).

showing of sufficient contacts by AUA with South Carolina to allow this Court to exercise personal jurisdiction over AUA. However, the information she presents is not new or different,[2] and Plaintiff still fails to rebut the legal argument and case law demonstrating why such alleged contacts are inconsequential to the issue of personal jurisdiction in this case. The supplemental information provided by Plaintiff includes:

1. A print-out from a public website about HCA Healthcare, which is connected to Grand Strand Regional Medical Center, where Plaintiff performed her limited elective clerkship rotations from August 3, 2020 to August 28, 2020 and August 31, 2020 to September 25, 2020.
2. The one-time Student Implementation Letter that is limited in scope and time to apply only to Plaintiff Emily Doe. This document was already filed by AUA with the Court in connection with AUA's Motion to Dismiss on February 22, 2021. (Dkt. No. 15-6).
3. Emails exchanged with Voorhees College and resulting Memorandum of Understanding ("MOU"). The MOU was already filed by AUA with the Court and discussed in conjunction with AUA's Reply in Support of its Motion to Dismiss on March 11, 2021. (Dkt. No. 18-2).
4. An Affidavit of Plaintiff Emily Doe.
5. An Affidavit of Joseph Maggioncalda (filed on Oct. 7, 2021) (Dkt. No. 39).

As noted, each of these purported "contacts" are insufficient for personal jurisdiction over AUA. Further, the majority of this information was already known by the Court before Plaintiff filed the Supplemental Memorandum and before jurisdictional discovery was allowed to be undertaken.

To be sure, Plaintiff has essentially shown no new or additional contacts by AUA with South Carolina, other than what was already squarely before the Court. Plaintiff has also failed to explain, as a legal matter, how these already-known alleged contacts could serve to establish personal jurisdiction over AUA for purposes of this case based on the case law. Further, Plaintiff cannot make such a showing because said alleged contacts are insufficient and/or irrelevant for purposes of the Court's personal jurisdiction analysis, as discussed herein.

---

[2] Plaintiff issued eleven (11) Rule 45 *subpoenas duces tecum* to third parties seeking a wide variety of documents on a broad range of topics as part of the jurisdictional discovery process allowed by the Court. However, Plaintiff has not attached nor discussed in her Supplemental Response any information or documentation learned or received as a result of those Rule 45 subpoenas.

## II.   LEGAL STANDARD: PERSONAL JURISDICTION

### A. Jurisdictional Contacts as of The Time Claim Arose

As a threshold matter, whether general or specific jurisdiction is sought, a defendant's "contacts" with a forum state are measured as of the time the claim arose. *See, e.g.*, *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 913 (9th Cir.1990) ("Only contacts occurring prior to the event causing the litigation may be considered."); *see also Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282, 287, n. 2 (4th Cir.1987); *Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 923 (D. Md. 1995).

"When a defendant properly challenges the court's personal jurisdiction through a Rule 12(b)(2) motion, 'the jurisdictional questions thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence.'" *Protocol, LLC v. Henderson*, 18 F. Supp. 3d 689, 695 (M.D.N.C. 2014), *as amended* (May 15, 2014) (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)).

### B. General Jurisdiction

Personal jurisdiction can be established by satisfying one of the two standards—general or specific. The United States Supreme Court has sharply limited general jurisdiction, which is only established over a corporate entity when that entity is domiciled in the particular state; otherwise, there must be contacts by the corporate entity, here AUA, that are so "continuous and systematic" as to render the entity essentially at home in the state. *Daimler AG v. Bauman*, 571 U.S. 117, 133 (2014); *see also BNSF Railway Co. v. Tyrrell*, 137 S. Ct. 1549 (2017). Establishing general jurisdiction over a foreign corporation requires that a "plaintiff must show that the corporation's activities in the state are 'continuous and systematic,'" which is a "demanding standard." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002).

### C. Specific Jurisdiction

Specific jurisdiction, on the other hand, requires that a defendant's actual acts or contacts with the forum give rise to the claims asserted against the defendant. *See Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017); *Walden v. Fiore*, 571 U.S. 277 (2014). Specific jurisdiction has also been limited by the Supreme Court in recent years. *Bristol-Myers Squibb*, 137 S. Ct. at 1773; *see also Reed v. Beverly Hills Porsche*, 307 F. Supp. 3d 494, 506 (W.D. Va. 2018) ("Having found that the purposeful availment aspect of specific jurisdiction is lacking, the Court need not address the latter two prongs.").

Plaintiff has failed to satisfy either standard, and this Court lacks personal jurisdiction over AUA for purposes of this case.

### III. LEGAL ARGUMENT

As with prior briefings, Plaintiff's "Supplemental" Response includes little in the way of the law, and fails to adequately address the narrow legal issue presented: whether this Court has personal jurisdiction over AUA for purposes of Plaintiff's case.[3] Throughout this litigation, Plaintiff appears to obfuscate matters by confusing legal standards, or by not citing applicable legal standards at all. For example, not once has Plaintiff cited the actual legal standard for personal jurisdiction, nor has she specified in briefing whether she believes specific or general personal jurisdiction exist over AUA—and which contacts she contends support each standard or type. That information is critical to the proper analysis of personal jurisdiction—there are two different legal standards and tests for general and specific jurisdiction, as described above.

### A. VOORHEES MOU AND RELATED DOCUMENTS ARE INSUFFICIENT TO ESTABLISH SPECIFIC OR GENERAL JURISDICTION.

In her Plaintiff Supplemental Response, Plaintiff again points to the "Memorandum of Understanding" ("MOU") with Voorhees College, a college that Plaintiff did not attend, and a

---

[3] AUA's previously filed Motion to Dismiss also sought dismissal of this case based on *forum non conveniens*, which is discussed *supra* in Section E of the Argument. (*See also* Dkt. No. 15-1 at 11-14).

college that has *nothing whatsoever* to do with a single allegation in Plaintiff's Complaint. As noted, Defendant AUA already provided the MOU and filed it with the Court in reply to Plaintiff's original Response Opposing AUA's Motion to Dismiss. (Dkt. No. 18). This was addressed squarely in that Reply brief, and the MOU produced as an exhibit was accompanied by an additional Affidavit from Mr. Sclafani, Esq., explaining the contents and circumstances of that MOU. (Dkt. Nos. 18 at 8-9; 18-1; 18-2). The fact remains that **the Voorhees MOU means nothing for purposes of this Court's jurisdiction over AUA for purposes of this case.**

### 1. MOU HAS NOTHING TO DO WITH PLAINTIFF'S CLAIMS

Plaintiff does not indicate whether she thinks this information is relevant to an analysis of "general" or "specific" personal jurisdiction, but the MOU makes a difference to neither. Any emails, documents, and the MOU itself, have nothing to do with Plaintiff or her claims—it is clear that the documents cannot be considered material under a "specific" personal jurisdiction analysis. Plaintiff's claims have nothing to do with Voorhees, and her claims do not allegedly arise out of AUA's limited contact with South Carolina in connection with the Voorhees MOU. *See Cricket Grp., Ltd. v. Highmark, Inc.*, 198 F. Supp. 3d 540, 545 (D. Md. 2016) (noting that any alleged contacts or "ties 'have no connection with the instant contractual dispute,' and so cannot be considered in the court's purposeful availment analysis.") (quoting *Perdue Holdings, Inc. v. BRF S.A.*, 45 F. Supp. 3d 514, 518 (D. Md. 2014)). After all, the "Supreme Court has made clear that an out-of-state party's contract with a forum-based party cannot 'automatically establish sufficient minimum contacts' in the forum, even where the dispute arises from that agreement"— which is not even the case here. *Id.* at 543-44 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

### 2. MOU DOES NOT CONFER GENERAL JURISDICTION

Rather, such information would likely only be relevant to "general" personal jurisdiction, and the case law is clear that a single agreement of this type, unrelated to Plaintiff or her claims,

5

and with no attendant and/or continuing responsibilities, obligations, or future consequences imposed on AUA in South Carolina, do not subject a non-resident to personal jurisdiction such that they are subject to being haled into Court there—this limited MOU with no performance by AUA in South Carolina simply cannot be said to render AUA "at home" in South Carolina. *See Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 190 (4th Cir. 2016) ("Nor can Perdue establish that BRF 'deliberately engaged in significant or long-term business activities in the forum state.'") (quoting *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009)). "[I]mplicit in the Supreme Court's" precedent is the recognition that a contract "cannot, by itself, establish purposeful availment" for purposes of personal jurisdiction. *Perdue Foods*, 814 F.3d at 191 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)).

The MOU has nothing to do with Plaintiff or her claims, and standing alone is simply insufficient to render AUA subject to personal jurisdiction in this Court, whether under the specific or general jurisdictional analyses. *See, e.g.*, *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000) (explaining that a court may exercise specific jurisdiction "*when the contacts relate to the cause of action* and create a substantial connection with the forum state" (emphasis added)); *Cricket Grp.*, 198 F. Supp. at 547 (D. Md. 2016) ("On these facts, Highmark's contacts with Maryland are simply too attenuated to justify this Court's exercise of personal jurisdiction" under either general or specific analysis).

### B. INFORMATION CONTAINED IN JOSEPH MAGGIONCALDA'S AFFIDAVIT IS IMMATERIAL.

Plaintiff also separately filed, a day late, an Affidavit from Joseph Maggioncalda, and although there is no related briefing, she appears to suggest that the Affidavit provides information relevant to the personal jurisdiction analysis. (Dkt. No. 39). The Affidavit does not.

Plaintiff fails to explain how the Affidavit or the information therein is or could be relevant to the issue of whether this Court has personal jurisdiction over AUA. The Affidavit is not discussed in Plaintiff's briefing. The Affidavit essentially states that Mr. Maggioncalda paid for

the tuition fees and costs for his daughter, the Plaintiff, while she attended school at AUA in Antigua, and that he lives in South Carolina. (Dkt. No. 39 at 1-2 ¶¶ 3, 4, 5, 6). He also indicates that he has mailed a letter to New York in connection with Plaintiff's education. (Dkt. No. 39 at 2 ¶ 6). Mr. Maggioncalda further claims that he participated remotely, by Zoom, in a disciplinary proceeding that took place in Antigua related to Plaintiff, and that he was in South Carolina at the time. (Dkt. No. 39 at 2 ¶ 7).

Each of these pieces of information is irrelevant and immaterial for purposes of this Court's consideration of whether it has personal jurisdiction over Defendant AUA. To the extent Plaintiff claims that any of the information set forth in the Affidavit is sufficient for specific jurisdiction, such an argument is without merit.

First, Plaintiff cannot manufacture personal jurisdiction over AUA through her own (or her father's) contacts with South Carolina. Those contacts are irrelevant to whether the Court has personal jurisdiction over AUA. Personal jurisdiction must involve contacts that are related to and/or arise out of the claims asserted by Plaintiff in this case, and the contacts must be contacts made <u>by AUA</u> with South Carolina. *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 544 (3d Cir. 1985) ("The documents to which we have been referred indicate nothing more than that appellant's decedent applied from Pennsylvania for admission to St. George's, that his application was accepted in Grenada, that St. George's and Foreign sent mail into Pennsylvania advising the prospective student of his acceptance and of other information concerning matriculation, and that appellants' decedent responded by mailing the requested tuition from Pennsylvania to Foreign in New York. . . . [W]e do not believe this [] constituted a substantial enough connection with the forum state to make reasonable an assertion for personal jurisdiction. If it were, St. George's would be amenable to suit for breach of contract, even where the breach and injury occurred in Grenada, in each state in which successful applicants resided at the time of their acceptance. We hold that this is not a permissible result under the principles enunciated

7

in *Dollar Savings Bank*.").

Moreover, the regular activities of a university like AUA, such as accepting for admission students who reside in a certain state, are insufficient to establish personal jurisdiction in the students' home state. In other words, the contacts Plaintiff asserts do not in fact enable this Court to exercise personal jurisdiction over AUA because they are either the contacts of any nationally or internationally prominent university and/or they are the contacts of Plaintiff herself, which cannot be the basis for jurisdiction over AUA. *Gehling*, 773 F.2d at 541; *see also Corrales Martin v. Clemson Univ.*, No. CIV.A.07-536, 2007 WL 4531028, at *2 (E.D. Pa. Dec. 20, 2007); *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 143 (4th Cir. 2020) ("Marriott's case-related contacts with South Carolina are too tenuous and too insubstantial to constitutionally permit the exercise of specific jurisdiction over Marriot" and finding there was no general jurisdiction).

This principle is well-established and was briefed by AUA in the original Motion to Dismiss. This case law and argument has never been addressed or contradicted by Plaintiff. Plaintiff instead continues to assert more of the same, either the exact same contacts she has already argued (i.e., the Voorhees contract) and/or contacts of the same nature or type as already shown (i.e., residencies in South Carolina by graduates no longer associated with AUA). Plaintiff has not made a *prima facie* showing of personal jurisdiction over AUA, and the Complaint should be dismissed.

### C. INFORMATION CONTAINED IN PLAINTIFF EMILY DOE'S AFFIDAVIT IS IMMATERIAL.

Plaintiff also attaches a second Affidavit of Plaintiff Emily Doe. (Dkt. No. 38-4). It also appears to offer no new information that is relevant to this Court's consideration of personal jurisdiction over AUA in connection with the instant case. Like the information contained in Mr. Maggioncalda's Affidavit, Emily Doe's Affidavit contains no information that is relevant to consideration of personal jurisdiction, or that could render AUA subject to personal jurisdiction in this Court for purposes of this case.

As AUA has argued before, which Plaintiff has never countered, *Plaintiff's contacts* with South Carolina are insufficient for specific personal jurisdiction over AUA. A plaintiff is not permitted to manufacture personal jurisdiction over Defendant AUA by pointing to her own contact with the State. To be sure, "it is the *defendant's and not the plaintiff's* contacts with the forum that must be evaluated." *Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.,* 746 F.2d 208, 214 (3d Cir.1984) (emphasis added).

In other words, simply because Plaintiff happened to be "in South Carolina when [she] received the notice" that AUA was pursuing an "honor code" or "disciplinary proceeding" in connection with her altered drug screen does *nothing* to impact this Court's personal jurisdiction over AUA. (Dkt. No. 38-4 at 4 ¶ 21; *see also id.* at ¶¶ 13-24). The case law supports that not a single one of these allegations and/or actions by the Plaintiff serve to render *Defendant AUA* at home in South Carolina. (Dkt. No. 38-4 at 3-5 ¶¶ 13-24).

These are not the type of contacts that are sufficient for purposes of personal jurisdiction over AUA. *See Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Products Co.,* 75 F.3d 147, 152 (3d Cir.1995) (University's mailing letter to a certain state was not sufficient to confer personal jurisdiction over the university in that state); *see also Corrales Martin v. Clemson Univ.*, No. CIV.A.07-536, 2007 WL 4531028, at *5–6 (E.D. Pa. Dec. 20, 2007) (dismissing for lack of personal jurisdiction and noting "Dr. Corrales has alleged and submitted evidence indicating Clemson's 1) enrollment and recruitment of students from Pennsylvania, including student-athletes; 2) participation in athletic, education, and professional events in Pennsylvania; 3) solicitation of donations from Pennsylvania residents; and 4) recruitment of faculty from Pennsylvania as part of national searches. Under *Gehling,* these activities do not indicate that Clemson has purposefully availed itself of Pennsylvania laws and protections.").

### D. STUDENT IMPLEMENTATION LETTER IS INSUFFICIENT FOR PERSONAL JURISDICTION.

Plaintiff further asserts that Grand Strand is connected to "HCA," and that this is

somehow material to the issue of the question of this Court's personal jurisdiction over AUA somehow because HCA is a national company and/or that HCA has locations across America. (Dkt. No. 38 at 2-3). AUA is unclear how this makes a difference, just like it is unclear how the Exhibit 1 showing HCA locations across America makes any difference to the narrow issue before this Court. (Dkt. No. 38 at 1-2; 38-1).

Plaintiff also appears to make much of the fact that AUA's production "disclose[d] a copy of the" Student Implementation Letter related to Plaintiff's unaffiliated clerkship at Grand Strand, and she attaches this document as "Exhibit 2" to her Supplemental Response. (Dkt. No. 38 at 2; Dkt. No. 38-2 at 5). However, this document was already filed and provided to the Court by AUA—it was filed with AUA's Motion to Dismiss. (Dkt No. 15-6). Moreover, as is clear from the documents produced by AUA in response to Plaintiff's discovery requests, including the email Plaintiff also attached as part of her Exhibit 2 to the Supplemental Response (Dkt. No. 38-2 at 2-3), AUA has no formal affiliation with Grand Strand, and its only connection with that hospital was the one-time arrangement specifically for Plaintiff, and at Plaintiff's express request. Because Plaintiff had connections through her father with that hospital, AUA permitted this one-time arrangement specifically for Plaintiff only. (Dkt. No. 38-2 at 3) (stating the request was made by Plaintiff, as "[o]ne of our students has approached Grand Strand Hospital about arranging a 4th year elective there. This particular student's father is the Chief of Anesthesiology at Grand Strand.").

The ultimate resulting document was the one-time "Student Implementation Letter," which is expressly limited in both scope and time, as it applies only during the timeframe of Plaintiff's period of elective clerkship, (*see* Dkt. No. 38-2 at 6), and is also limited in terms of to whom it applies (as it only applies to Plaintiff, *see* Dkt. No. 38-2 at 6). *See also Scherer v. Curators of Univ. of Missouri & L. Sch. Admission Council*, 152 F. Supp. 2d 1278, 1282–86 (D. Kan. 2001) (holding that the Court's "exercise of personal jurisdiction over defendant with respect to

10

plaintiff's case would violate the requirements of due process" where "there is no evidence that the Law School initiated any contacts with Plaintiff whatsoever—they merely responded to plaintiff's inquiries").

While Plaintiff appears to suggest that the falsified drug screen that she submitted to AUA was somehow sufficient to establish personal jurisdiction over AUA, such a claim is without merit. Plaintiff appears to contend that the forged drug screen was submitted to AUA for her to participate in the limited Grand Strand elective clerkship rotation (*see* Dkt. No. 38 at 1-2 and Dkt. No. 38-2 at 5); however, such a representation is demonstrably false. The falsified drug screen Plaintiff submitted to AUA was submitted by Plaintiff as part of the required paperwork to participate in a radiology clerkship at Rochester General Hospital in New York, which she was scheduled to begin on or around October 5, 2020. The falsified drug screen had nothing to do with Plaintiff's participation in an elective clerkship rotation with Grand Strand. (*See* Sclafani Affidavit, Dkt. No. 15-2 at 5-6 ¶¶ 21, 22, 24). Documents supporting this information and related details were already provided to the Court by AUA in briefings previously filed, including in Mr. Sclafani, Esq.'s, Affidavit. (*See generally* Dkt. No. 15-2).

As such, Plaintiff's claim that her actions in South Carolina are sufficient to confer personal jurisdiction over AUA in this Court is without merit. *See Maseng v. Lenox Corp.*, 483 F. Supp. 3d 360, 365 (D.S.C. 2020) (dismissing case for lack of personal jurisdiction under both general and specific tests, and noting that "[w]hen a cause of action arises out of a defendant's contacts with the forum, a court may seek to exercise specific jurisdiction over that defendant if it purposefully directs activities toward the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.").

As AUA set forth in the original Motion to Dismiss, case law also dictates that such one-off contacts, such as the limited and one-time Student Implementation Letter, by a defendant with a forum are insufficient for general jurisdiction as they do not constitute "systematic and

11

continuous" contact so as to render AUA "at home" in the forum. *See Hardnett v. Duquesne Univ.*, 897 F. Supp. 920, 923 (D. Md. 1995) ("The sole 'contacts' of defendant . . . are thus the sending of literature to [plaintiff] in Maryland, his returning a completed application from his State, and finally his receipt of acceptance in Maryland. No claim for general jurisdiction can be constructed on this basis, nor indeed could it be constructed even if it were true as of the time of the claim that a recruiter had visited a college fair in this State, that a toll free number was available for further inquiries or that video presentations were mailed into the State. Such contacts, quite simply, are not sufficiently 'continuous and systematic' to make Duquesne University susceptible to every sort of claim that might be filed in Maryland, including those unrelated to the specific transaction in this case. *[Plaintiff] cites no case in which a university from a nonforum state has been held subject to the general jurisdiction of a forum state.*") (emphasis added).

It is also well-established that the routine actions of or contacts by a university with a forum, such as the mailing of transcripts to the forum state at the request of a current or former student or graduate, are insufficient to confer either specific or general personal jurisdiction over the university in that forum. *Norris v. Oklahoma City Univ.*, No. C-93-1626-VRW, 1993 WL 313122, at *4 (N.D. Cal. Aug. 3, 1993), *aff'd,* 21 F.3d 1115 (9th Cir. 1994) ("Defendant's compliance with such a request by plaintiff [to send documents to California] cannot be deemed purposeful availment of California law or a basis upon which defendant could reasonably anticipate being haled into court here."); *see also Lewis v. Full Sail, LLC*, 266 F. Supp. 3d 320, 323–24 (D.D.C. 2017) ("Mr. Lewis . . . appears to assert that Full Sail made a phone call, sent a mesh laptop case, and sent tuition funds to a student or prospective student in the District of Columbia. These District of Columbia contacts—the only District of Columbia contacts to which Mr. Lewis points the Court—do not permit the Court to exercise general or specific jurisdiction [over defendants]. As concerns general jurisdiction, Mr. Lewis has not demonstrated that any of the defendants have contacts with this forum that are 'continuous and systematic' such that those

defendants are 'essentially at home' in this forum. And as concerns specific jurisdiction, nothing Mr. Lewis has provided to the Court demonstrates that any of his claims arise from whatever contact the defendants have had with this forum.") (internal citations omitted).

The case law, which has never been countered by Plaintiff, clearly supports the conclusion that the exercise of personal jurisdiction over AUA, whether general or specific, would be inappropriate, and the Complaint should therefore be dismissed.

### E. DISMISSAL IS ALSO APPROPRIATE ON *FORUM NON CONVENIENS* GROUNDS.

Defendant AUA also originally moved for dismissal of Plaintiff's Complaint pursuant to the alternative basis of *forum non conveniens*. Plaintiff has never addressed or contested this argument for dismissal, and AUA maintains that dismissal is appropriate for this additional reason. (*See* Dkt. No. 15-1 at 11-14; Dkt. No. 18 at 2-4).

While Plaintiff seemed to contend at the June 24, 2021 hearing on AUA's Motion to Dismiss that she somehow addressed AUA's *forum non conveniens* argument in her briefing, this is false. (*See, e.g.*, Dkt. No. 17 (Pl. Resp.)). It appears that there is no mention of *forum non conveniens* in any document filed by Plaintiff with this Court during the lifetime of this case. *See Little v. Brown & Williamson Tobacco Corp.*, No. 2:98-1879-23, 1999 WL 33591436, at *2 (D.S.C. Oct. 4, 1999) ("Plaintiff did not contest this argument … Therefore, to whatever extent plaintiff's second amended complaint states a claim [based on the uncontested argument], that claim is dismissed.").

Defendants continue to assert that this case should be dismissed for lack of personal jurisdiction, but also seek dismissal based on the uncontested argument of *forum non conveniens*. *See generally Patel v. Am. Univ. of Antigua*, 104 A.D.3d 568, 569, 962 N.Y.S.2d 107, 109 (2013) (reversing trial court's denial of motion to dismiss on *forum non conveniens* grounds due to availability of better forum in Antigua); *Alla v. Am. Univ. of Antigua*, 106 A.D.3d 570, 965 N.Y.S.2d 469, 469 (2013) (affirming dismissal of complaint based on *forum non conveniens* where

13

case should be adjudicated in Antigua); *Aina v. Am. Univ. of Antigua*, 161 A.D.3d 508, 508–09, 73 N.Y.S.3d 430 (2018) (affirming dismissal of case based on *forum non conveniens* due to availability of better forum and noting that the "fact that [AUA] retains a New York firm to provide administrative support is not sufficient to render New York an appropriate forum"). [4]

---

[4] When Plaintiff filed this case, and before AUA was served with the Complaint, Plaintiff moved to proceed anonymously "to minimize reputational harm." (Dkt. No. 5). Plaintiff explained in her Motion that she "is on the cusp of a bright future as a medical doctor," and she therefore sought to prevent such efforts from "being derailed and damaged" as a result of her choosing to file this litigation against her former medical school in federal court. (Dkt. No. 5 at 2). It remains AUA's position that a ruling on the merits of Plaintiff's Motion, which was filed before AUA appeared, is necessary, and any such ruling would not result in the exercise of personal jurisdiction over AUA before personal jurisdiction has been resolved by the Court.

    First, it appears Plaintiff waived any right or ability to proceed further in this case using a pseudonym. Multiple filings made by Plaintiff on the public record have disclosed her full and true name. In the Motion to Compel, Plaintiff's name appears throughout without any redaction. (Dkt. No. 36-2 at 6, 7, ¶¶ 12, 15, 20, 21, 22, 24; Dkt. No. 36-4 at 11, 12, 13, 15, 16, 17, 18, 19, 21; 36-5 at 4). Plaintiff's "Supplemental" Response, filed on October 6, 2021, was filed on the docket in the public record, and also makes reference to Plaintiff's true name. (Dkt. No. 38-2 at 6). Further, the "additional attachment" filed by Plaintiff on October 7, 2021—the Affidavit of Joseph Maggioncalda—also filed on the public record, plainly states that he is the father of Plaintiff Emily Doe. (Dkt. No. 39 at 1 ¶ 2). Not only does Plaintiff fail to satisfy any of the straightforward factors to be weighed under *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993), by a court deciding if a party may proceed anonymously, but Plaintiff's filing of these documents in the public record, all of which disclose her full name, could also constitute a waiver of Plaintiff's request to proceed under pseudonym. (*See also* Dkt. No. 11).

    Moreover, in her briefing seeking to proceed pseudonymously, Plaintiff frequently states incorrectly that because AUA is a private university, the Court should favorably view Plaintiff's Motion. (Dkt. No. 5 at 11; Dkt. No. 16 at 3, 5). The case law holds precisely the opposite. *See Doe v. Merten*, 219 F.R.D. 387, 394 (E.D. Va. 2004) (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) ("To be sure, courts in general are less likely to grant a plaintiff permission to proceed anonymously when the plaintiff sues a private individual than when the action is against a governmental entity seeking to have a law or regulation declared invalid."). In fact, Plaintiff goes so far to incorrectly contend that "[i]f this was a case in which a public university was involved, such that expenditure of public funds requires the sunshine of public scrutiny, the Court's inquiry would be different," albeit she offers no legal citation. (Dkt. No. 16 at 5). This is an incorrect statement of the law by Plaintiff. The case law is clear that the opposite is true—cases recognize that there is more at stake for a private entity named as a defendant, like AUA, than for a public or governmental entity, including but not limited to an increased the risk of harm, and there is therefore more reason to deny a plaintiff the ability to proceed under a pseudonym in circumstances like those presented in the instant case. "The rationale for this is that the filing of an action challenging constitutional validity generally 'involves no injury to the Government's 'reputation,' while an action against a private party can result in damage to the defendant's reputation as well as economic harm." *Id.* (citing *Merten*, 219 F.R.D. at 394).

    Moreover, the Court need not wait to decide this Motion to proceed anonymously until a decision on personal jurisdiction is made and could rule on Plaintiff's Motion now. Plaintiff filed her 3-page Motion, which makes no reference to the governing case *Jacobson*, before Defendant was served. Her Motion is actually captioned "Motion to Proceed Under a Pseudonym to <u>Minimize Reputational Harm</u>." (Dkt. No. 5) (emphasis added). The case law is abundant and clear that potential reputational harm is *not* an interest that entitles a party to proceed under a pseudonym. *See Doe v. Pub. Citizen*, 749 F.3d at 265–66 (quoting *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 178, 182 (4th Cir. 1988)) ("An unsupported claim of reputational harm falls short of a compelling interest sufficient to overcome the strong First Amendment presumptive right of public access."); *Doe v. Pittsylvania Cty., Va.*, 844 F. Supp. 2d 724, 728 (W.D. Va. 2012);

## IV. <u>CONCLUSION</u>

Even all of the points made by Plaintiff, if taken cumulatively, still fail to show sufficient contacts to render AUA subject to this Court's personal jurisdiction. *See New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*, 376 F. Supp. 3d 683, 696 (E.D. Va. 2019) (cumulative Virginia contacts of ad agency, which was in contract with furniture store chain, were too attenuated to justify exercise of personal jurisdiction in Virginia, where contacts were limited to solicitation of chain's business prior to contract and communications with chain following the contract).

For the reasons set forth herein, as well as in AUA's Motion to Dismiss (Dkt. No. 15) and Reply in Support (Dkt. No. 18), AUA respectfully requests that this Court dismiss Plaintiff's Complaint for lack of personal jurisdiction over AUA, and/or on the basis of *forum non conveniens*.

/s/ Brittany N. Clark
Brittany N. Clark, Fed. ID. No. 12891
Angus H. Macaulay, Fed. ID No. 5248
NEXSEN PRUET, LLC
1230 Main Street, Suite 700 (29201)
Telephone: 803.771.8900
BClark@nexsenpruet.com
AMacaulay@nexsenpruet.com

*Attorneys for Defendant*
*American University of Antigua, Inc.*

October 13, 2021
Columbia, South Carolina

---

*Doe v. N. Carolina Cent. Univ.*, No. 1:98CV01095, 1999 WL 1939248, at *1–2 (M.D.N.C. Apr. 15, 1999) (stating that the "Fourth Circuit has noted that the presumption of openness applies to party identity" and denying plaintiff's motion to proceed under pseudonym); *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804 (E.D. Va. 2012).

The First Amendment is implicated where, like here, a party seeks to use the courts—yet wishes to proceed anonymously. Courts have held that "[i]dentifying the parties to the proceeding is an important dimension of publicness." *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 872 (7th Cir. 1997). "Public access to a plaintiff's name is 'more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings.'" *Doe v. Pittsylvania Cty., Va.*, 844 F. Supp. 2d 724, 727–28 (W.D. Va. 2012) (quoting *Stegall*, 653 F.2d at 185). Public access to a party's name is a First Amendment guarantee—it is not only the Defendant who has an interest in openness, transparency, and identification of the Plaintiff, who brought this litigation, by her true and complete name—this impacts the general public as well. Rule 10(a) also requires that the "title of the action shall include the names of all parties." Fed. R. Civ. P. 10(a). For these reasons, Defendant respectfully requests that the Court rule on Plaintiff's Motion to Proceed Under Pseudonym, as this case has continued to proceed, including through a period of jurisdictional discovery which included Rule 45 subpoenas to third parties, and the First Amendment implications at stake go beyond the interests of just AUA.

15